## MOFFET v. SACKETT.

Complaint for indebtedness on an account for goods sold and delivered, work and labor, claiming judgment for $197.25. Answer, that goods were furnished and services performed under a contract at stipulated prices, amounting to $181, but that they were worth no more than $173 : *Held,* that the defendant could reduce the recovery by evidence of defects in the goods or work to be performed upon them under the contract, *e. g.,* that a chandelier, which the plaintiff sold and agreed to hang, fell from a defect in its construction or of skill in hanging it.

And this notwithstanding the defect was not discovered until after issue joined.

A referee having reported that the damage from such defect (which he did not allow because there was no counter-claim in the answer) was "from $12 to $15," the court, on appeal from the judgment entered on the report, cannot determine the amount of such damage, but is bound to order a new trial.

APPEAL from a judgment of the Superior Court of New York. The complaint averred that the defendant was justly indebted to the plaintiff, on an account for goods, wares and merchandise sold and delivered to said defendant by said plaintiff, and for work and labor done and performed by the plaintiff and his servants for the defendant, and at his request, and for cash paid, laid out and expended by the plaintiff for the defendant, and at his request. Judgment was claimed for $197.25. By the answer, the defendant denied that he was indebted to the plaintiff in the amount claimed. He averred that the articles, service and cash advances were furnished under a contract, at certain stipulated prices, and that the aggregate was $181. The answer concluded with the following averment: "The defendant,

further answering, avers that the goods, wares and merchandise, and work, labor and services and cash advanced, mentioned in the complaint and bill of particulars in this action, were worth no more than the sum of $173."

The case was tried before Robert Emmett, as a referee; and on the trial it appeared that the plaintiff's claim consisted of a quantity of gas fixtures sold by the plaintiff to the defendant, and put up by the former in the defendant's house. One ground of defence was, that the plaintiff had charged more for the articles than he had agreed to furnish them for; the defendant's position being that he was to have them at the same price at which the plaintiff had furnished similar articles to the defendant's brother. As the result of this branch of the controversy the referee deducted $2 from the plaintiff's account and allowed the balance. The defendant proved (against an objection of the plaintiff's counsel) that one of the chandeliers fell upon the floor of the parlor in which it hung, a few weeks after it was put up, and after issue was joined in the case. A person had been employed by the defendant to put a covering upon it to protect it from flies, &c., and it fell immediately after he had finished his work. It appeared that the rod to which the chandelier was attached was connected with a cylindrical piece of metal affixed to the ceiling by means of a screw, the end of one piece being beaded and of the other hollow and grooved; and the defendant's evidence being that the beaded end was too small for the grooved end of the other piece, while the plaintiff attempted to show that the thread upon the inserted end had been injured in some way after the chandelier was put up. Both parts of the rod were furnished by the plaintiff. The defendant's witness swore that it was worth from $12 to $15 to repair and again put up the chandelier. Another way of stating the injury, by one of the defendant's witnesses, was, that the chandelier, put up improperly as it was, was worth from $20 to $25; when, if it had been properly put up, so as not to be in danger of fall-

ing, it would have been worth from $35 to $40. It is stated in the Case that the evidence about the falling of the chandelier and as to the manner in which it was put up, was received, subject to the plaintiff's objection. The referee took time to make his decision, and in his report, made after the trial, he found that the chandelier had not been securely put up or attached to the ceiling when it fell; but he stated that he had made no deduction from the plaintiff's account in consequence of the chandelier having fallen and suffered damage thereby, or by reason of any expense incurred by the defendant for the repair of such damage, or for putting it up again, "because such deduction, even if such damage and expense had occurred before the defendant had put in his answer, could only be claimed by way of recoupment, and not as a deduction in the price or value of the said chandelier."  .

From the judgment entered on the report there was an appeal to the general term; and in giving judgment on the appeal, the court considered that the damage from the falling of the chandelier was a proper deduction from the plaintiff's bill, and they accordingly made a deduction of $12 from the amount reported by the referee. The defendant had, before the trial, made an offer, under section 385 of the Code, that judgment might be taken against him for $183. The amount found due after the deduction ordered by the general term was twenty-five cents larger than the sum so offered, and consequently the defendant was left to pay the costs.

The defendant appealed to this court.

*Nicholas Hill,* for the appellant.

*A. J. Vanderpoel,* for the respondent.

S. B. STRONG, J. The plaintiff claims in his complaint that the defendant is justly indebted to him in the sum of $197.25, together with interest thereon, on an account for

goods, wares and merchandise sold and delivered to the defendant by the plaintiff, and for work and labor done and performed, and for cash paid, laid out and expended by the plaintiff for and at the request of the defendant. The account referred to in the complaint was for gas fixtures, and for work, and labor and money advanced in reference to them. It was proved on the trial that the defendant was to have such fixtures at the same prices that his brother, Amos M. Sackett, was to pay for similar articles. The defendant contends that the contract was special, and should have been particularly set forth in the complaint. There was nothing special about it except as to the price, and in such case the general *indebitatus* count was sufficient under our former system of pleading, and a similar general allegation is, I think, tolerated by the Code. The only change absolutely required in this kind of action by the Code is, that the plaintiff is bound to deliver to the defendant, simply upon demand, a copy of his account. Besides, it is well settled that if a special agreement has been performed so as to leave a mere simple debt or duty between the parties, there can be a recovery under a general count of *indebitatus assumpsit.*

That the requisition in the 142d section of the Code, that the complaint must contain a plain and concise statement of the facts constituting a cause of action, is satisfied by the general allegation of indebtedness for goods sold and delivered, was decided by this court in *Allen* v. *Patterson* ( 3 *Seld.*, 476).

The referee deducted $2 from the price charged for " the basket harp with globe," to make it correspond with what the defendant's brother paid for a similar article. In that he was right.

The plaintiff was allowed for seventeen globes one dollar and twenty-five cents each instead of fifty cents, which was the price paid by the brother for similar articles. It seems that after the contract had been made, and while it was

being performed, the plaintiff told the defendant that he could not have the globes unless he paid the additional price. The defendant claimed to have them at the price mentioned in the original agreement, but the plaintiff answered that if he would not take them at the additional price he should not have them at all. It was after that conversation that the defendant directed that the globes should be sent to him. The plaintiff had not, of course, any right to change a part of the contract upon his own volition. The proposed alteration, to bind the defendant, should have been positively assented to by him. The evidence was not, in my opinion, sufficient to prove such assent. In giving the direction that they should be sent to him he may have relied upon his rights under the original agreement. He insisted, as he had a right to insist, that the articles should be delivered to him at the price originally specified. The plaintiff, certainly without any sufficient reason, demanded the additional price. No agreement was directly made at the time. I think that under the circumstances the plaintiff should be held to his agreement, and that the referee erred in allowing him the additional compensation.

The plaintiff, in his complaint, claimed compensation for work and labor, thus admitting, in effect, that they were embraced in his contract. It was proved on the trial that the plaintiff engaged to put up the fixtures in the defendant's house. The plaintiff put up two chandeliers and charged $45 for each, that being the price paid by the defendant's brother. The defendant contended that one of the chandeliers had been imperfectly and insufficiently fastened, and claimed a deduction on that account. That chandelier fell upon the floor of the parlor, but it was after the commencement of this suit, and it was contended by the plaintiff that any evidence as to that accident was, therefore, inadmissible. It seems to me that such evidence was properly admitted, if it had a tendency to show any original imperfection in the article, or any fault in the work of fastening it to the

ceiling. A gas-fitter testified that "the defect consisted in the iron rod which ran through the pipe and the connections; the connections embrace the screws; they were too large for the screws on the rod; the male screw was not large enough for the female screw," and that "it could not be screwed tight or home." The same witness testified that the chandelier, as it was in the ceiling, immediately previous to its falling, was worth from $20 to $25, about $15 less than if it had been, as he said, "well put up, so that it would not fall." The referee found that the value of the repairs and putting up of the chandelier was from $12 to $15; but he refused to make any deduction, because, as he thought, it could only be claimed by way of recoupment (which was not claimed in the answer) and not as a reduction in the price or value of the chandelier. In this the Superior Court differed from him, and in doing so that court was clearly right. The stipulated price was not solely for the chandelier, but was also for putting it up in the defendant's house. That is clear, not only from the testimony of the defendant's brother, but also from the fact that no separate charge was made for the work. The two chandeliers are charged in the plaintiff's bill at $90. If a plaintiff charges in his complaint for a general indebtedness for goods, and work and labor bestowed upon them, and proves that there were specified prices, and it appears from his evidence, or the evidence of the other party, that there were defects in the goods or work, it follows that there was never an indebtedness to the extent claimed, and the amount allowed to him should be limited accordingly. It requires no counter claim to reduce the amount. The court below endeavored to cure the difficulty by reducing the recovery; but in attempting to escape from one gulf they fell into another. The referee stated, in effect, that the difference in value between a chandelier properly fastened to the ceiling and the one which fell upon the floor was from $12 to $15, thereby intimating that it might exceed the smaller sum. The Supe-

rior Court, however, allowed a deduction of $12, and by that enabled the plaintiff to recover some twenty-five cents more than what the defendant had paid into court. Where that court could find any authority thus to determine the amount of unsettled damages, and where the uncertainty was apparent from the manner in which the statement was made, I have been unable to discover. It is undoubtedly competent for a court sitting at general term, on an appeal from the special term, to allow or reject a claim of either party where its extent has been definitely fixed or can be clearly determined; but where the amount is indefinite and uncertain, it cannot be determined by the court without assuming the province of a jury. The judgment should be reversed and there should be a new trial, the costs to abide the event of the suit.

DENIO, J. (Dissenting.) The manner in which a defence is to be set out in an answer is prescribed by the 149th section of the Code. It must contain, first, a general or specific denial of each material allegation of the complaint which it is intended to controvert; second, a statement of any new matter constituting a defence or counter claim, in ordinary and concise language, without repetition." The question upon this appeal is, whether the denial in the answer that the goods, services and money, for which the plaintiff sought to recover, were worth the amount which the plaintiff claimed, and the assertion that they were not worth more than a certain sum, which was less by some $24 than what he so claimed, fairly embraces a reclamation on account of the want of care or skill in putting up the chandelier. The allegation in that part of the answer referred to would suggest no other idea than this, that upon the footing of a *quantum valebant* the plaintiff could not recover so much as he had claimed. This is a denial of the complaint *pro tanto*, and not the setting up of any new matter. The defence made upon the trial, so far as this question is concerned, did not consist

in questioning the market or intrinsic value of the articles sold, and the attempt to state his damage in such language as to make it appear to bear upon such value was absurd. If the defendant had any ground for resisting the plaintiff's demand, as I suppose he had, it arose out of a new and distinct matter, to wit, that the plaintiff's workmen, for whose conduct he was responsible, had acted negligently and unskillfully in putting up the chandelier. It is clear that the answer did not allude to this defence; indeed it could not, for it was not known at the time the answer was put in. The proper course for the defendant was to put in a suplemental answer, according to section 177 of the Code.

It follows that the decision of the referee was correct. The general term had no authority to make the deduction of $12, whether the referee decided erroneously or not, but should, on its own principles, have granted a new trial. But as I think no error was committed by the referee, I am in favor of affirmance.

All the other judges concurring,

Judgment reversed and new trial ordered