HENTZ *et al. v.* MINER.

(*Supreme Court, General Term, First Department.* May 13, 1892.)

1. ACTION ON ACCOUNT—COMPLAINT.

The complaint, in an action on an account, is sufficient where it alleges that defendant is indebted to plaintiffs in a named sum, on an account for money expended and commissions earned in the purchase and sale of merchandise by them, as her agents and at her request, as more fully appears by certain annexed accounts made a part thereof.

2. SAME—EVIDENCE—POWER OF ATTORNEY.

Defendant executed an instrument reciting that plaintiffs had, at her request and on her husband's order, transferred to her account on their books her husband's balance of account, and all property of his in their hands. She agreed therein that plaintiffs should retain all balances, moneys, and property in their hands as security for the payment of any indebtedness then existing, or which might thereafter become due to them, by reason of any further business between them and her husband or herself. Then followed a power of attorney authorizing plaintiffs to receive from the husband any and all orders in his own or in her name for the purchase or sale of merchandise, etc. *Held*, that such instrument was admissible against the wife in an action to recover the balance due for moneys expended and commissions earned on purchases and sales made at the husband's instance.

**3.** SAME—EVIDENCE—ADMISSIONS OF AGENT.
    Evidence that on the execution of such instrument the husband acknowledged the correctness of an account presented to him by plaintiffs was admissible.

**4.** GAMING CONTRACTS—DEALINGS IN FUTURES—DELIVERY.
    Purchases and sales of merchandise are not gaming transactions, when it is intended that there shall be a delivery and receipt of the goods, and not merely a payment of margins, notwithstanding a contrary secret intention on the part of the one so buying and selling.

Appeal from circuit court, New York county.

Action by Henry Hentz and another against Elizabeth F. Miner. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

For decision on former appeal by defendant, see 12 N. Y. Supp. 474.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*Samuel Ashton,* for appellant.    *T. Henry Dewey,* for respondents.

BARRETT, J. The complaint in this action sets forth that on the 4th day of June, 1888, the defendant was indebted to the plaintiffs in the sum of $2,304.54, upon an account for money laid out and expended and commissions in the purchase and sale of wheat and coffee by them, as the agents of defendant and at her request, as more fully appears by certain accounts which are annexed and made part thereof. It also sets forth that the said sum became due and payable on the 4th day of June, 1888, and that no part of it has been paid. These averments were sufficient to make out a good cause of action, and the complaint was not, under the authorities, demurrable. *Allen* v. *Patterson,* 7 N. Y. 476; *Cudlipp* v. *Whipple,* 1 Abb. Pr. 106; *Witherhead* v. *Allen,* 4 Abb. Dec. 628; *Moffet* v. *Sackett,* 18 N. Y. 522. The motion to dismiss the complaint at the opening of the trial was therefore properly denied.

It appeared that prior to the 21st day of May, 1888, the defendant's husband, Joseph L. Miner, had transacted business with the plaintiffs in his own name. At the date named, the defendant executed an instrument which recited that the plaintiffs had that day transferred upon their books to her account, at her request and upon her husband's order, his ledger balance of account and all property of his in their hands; also that he desired to open a new account with the plaintiffs, and to transact further business with them. Following this recital was an agreement on Mrs. Miner's part, in consideration of the facts so recited and of one dollar, that the plaintiffs should hold and retain all balances, moneys, and property in their hands, and such as might thereafter come into their hands, as security for the payment of any indebtedness then existing, or which might thereafter become due to them, by reason of any existing transactions, or any further business, between them and her husband or herself. An extremely full power of attorney followed, authorizing the plaintiffs to receive from Mr. Miner any and all orders in his own or in her name, for the purchase or sale of merchandise for future delivery or otherwise; and to pay over to him, as her agent, all profits due, or which might become due, to her in any and all business transactions undertaken in her name. The elaborate objections taken to the admission of this instrument were frivolous. The whole case rested upon transactions entered into upon the authority thus expressly conferred. Under it Mr. Miner gave orders for the purchase and sale in his wife's name of the merchandise specified in the accounts. These orders were duly executed, and written notices, furnishing the customary details, and specifying Mrs. Miner as the principal, were duly given. These transactions ran on until the 4th of June, 1888, when the account was closed because of failure to keep up a proper margin. Mr. Miner agreed to keep the transactions—to use a technical phrase employed by brokers upon the produce exchange—"margined to the market." In other words, to keep sufficient money or property in the plaintiffs' hands to secure them against loss. In this respect Mr. Miner failed. The margins fell be-

hind about the 1st of June, and the plaintiffs repeatedly requested him to make such margins good. He promised to do so, but failed, and, finally, on the 4th of June, the plaintiffs, being unable to wait any longer, closed the account. This was done in the ordinary way, by making contracts at the produce exchange so timed as to meet contracts previously made for purchases or sales of merchandise receivable or deliverable at future dates. There was no question, therefore, of conversion. Nor were the plaintiffs carrying merchandise or other property for the defendant. They simply made contracts for the purchase or sale of merchandise receivable or deliverable at a future day, and the required margin was to secure them against fluctuations in the market pending the maturity of these contracts. The defendant's account was closed by the making of other contracts at market rates to mature at the dates of the maturity of the original contracts. The result of the closing of the defendant's account in the manner indicated was a balance against her of the sum claimed in the complaint, and we see no reason why the balance was not, upon the facts presented, properly recoverable.

The accounts, showing the final transactions and the balance in question, were delivered to Mr. Miner upon the day when matters were thus closed up, and the very next day he acknowledged the correctness of these accounts, and promised that the balance should be paid. It is contended that these admissions of Mr. Miner were not admissible against the defendant. We think, however, that the statement of the account was within the scope of his authority. If the closing of the account had resulted in a balance in the defendant's favor, he was expressly authorized to receive that balance. Under the broad terms of the agreement to which reference has been made, he was authorized to transact the entire business in which the defendant was thus put forward. She left everything connected therewith to him. The notices of purchase and sale were regularly sent to him; also all of the accounts connected with the various transactions. The final account was properly sent to him, and his retention thereof, without objection, for a reasonable time, would have made it an account stated. Whether the account was stated in this manner, or directly by admission of its correctness, is immaterial in principle. He had the power to state it, whether the result was favorable or unfavorable. In other words, the defendant gave him power to act for her throughout as though the transactions were his own. But were this otherwise, it would not affect the result, as the plaintiffs proved each item in the account by independent evidence, and there was no proof to the contrary.

The real question in the case was whether the speculations in question were illegal, as being in the nature of gaming or wagering transactions. This question was fairly submitted to the jury, and they found that the contract was not intended to be settled by mere payment of differences, but were legitimate transactions entered into with the intention of delivering or accepting the goods at the appointed time. We do not agree with the defendant that his secret individual intention must govern notwithstanding the plaintiffs' legitimate intention. Nor do we think that any such doctrine was intended to be laid down in *Bigelow* v. *Benedict*, 70 N. Y. 205. The transactions were not illegal, unless the understanding between the parties was that the contracts were to be settled by the mere payment of differences. If the employment was to make legitimate contracts, and such contracts were made with the honest intention on the plaintiffs' part of carrying them out by the delivery or the receipt of the goods, they cannot be charged with what was in the defendant's mind, undisclosed to them, and of which they had no suspicion. The requests to charge were repetitions, and involved, and they were properly disregarded. The charge as delivered presented the question clearly, and in language readily comprehensible by the jury. It was unnecessary to add anything to the instructions thus given, and no error was committed in declining to put these instructions in other and more prolix forms. No error

to the prejudice of the defendant was committed in any of the rulings with respect to the admission or rejection of evidence; nor, upon the facts, do we see any reason for disturbing the verdict. The judgment and order appealed from should therefore be affirmed, with costs. All concur.