ELIZABETH E. NOONAN v. INDEPENDENCE INDEMNITY COMPANY, Appellant.—41 S. W. (2d) 162.

Division One, July 28, 1931.

*Polk, Williams & Campbell* for appellant.

708

*Leahy, Saunders & Walther* and *Harold F. Hecker* for respóndent.

ATWO.OD, J.—This is a suit on a bond given to secure the performance of a building contract. The case was tried to a jury which returned a verdict in favor of plaintiff, Elizabeth E. Noonan, and against defendant, Independence Indemnity Company, upon which judgment for $13,787.64 was rendered, and from this judgment defendant has appealed.

The evidence showed that plaintiff was the owner of vacant ground in De Mun Park, a subdivision adjoining the city of St. Louis, and desiring to erect a four-family apartment building thereon for which she had plans and specifications, she entered into said building contract with the J. W. Caldewey Construction Company, Inc., under date of September 20, 1923. Thereafter, under date of September 24, 1923, plaintiff, through an insurance broker named Mulligan, for a premium of $421.50, procured defendant's said bond in the penal sum of $28,100 executed by Orr C. Frazier as defendant's attorney in fact, he being of the firm of Muckerman & Cushman, who were at that time defendant's agents. Said J. W. Caldewey Construction Company, by J. W. Caldewey, president, executed said bond as principal and defendant as surety, plaintiff herein being named as obligee.

The evidence further showed that on October 5, 1923, plaintiff delivered to J. W. Caldewey, president of said construction com-

pany, at said company's office, the two deeds of trust and accompanying notes, one deed of trust securing the principal sum of $5,000 and the other securing the principal sum of $4500, $750 having been paid upon the latter, leaving a balance of $3750, the aggregate principal amount of the notes secured by said two deeds of trust being $8,750; that work was begun under said contract on October 10, 1923, and progressed to the point where the foundation was put in and the joists were laid for the first floor; that thereafter the work practically ceased, and early in December, 1923, plaintiff discovered that the contractor was going to fail in the construction of the building within the time fixed by the contract, and under date of December 12, 1923, she wrote a letter to defendant, advising defendant that the business with said contractor was in a very unsatisfactory shape, that she was receiving unpaid bills and notices of liens, that material seemed to be arriving on the premises and nothing was being paid for; that it seemed impossible for her to get in touch with Mr. Caldewey, that "he seems to be full of promises and never respects any of them," and plaintiff asked defendant's speedy attention. This letter was received by Muckerman & Cushman, defendant's agents aforesaid, but plaintiff was given no reply. About a week thereafter plaintiff called upon Mr. Cushman of said firm of Muckerman & Cushman and was referred to the aforesaid Orr C. Frazier and was told by Mr. Cushman that Mr. Frazier was attending to this business and would give the matter attention. It further appears that on the occasion of this visit plaintiff waited for the arrival of Mr. Frazier and when he came in she told him that Mr. Caldewey had not been working on the building and would not get it finished in the time specified, and Mr. Frazier thereupon told her that he would take the matter up with the construction company; that she waited to hear from Mr. Frazier and when he failed to communicate with her she telephoned him, and was asked to come down to see him and when she went down he was not there; that she finally got to see Mr. Frazier again and told him that she was unable to see Mr. Caldewey, that she had been to his office several times and that he was always out; that Frazier then said: "Well, I will see him tomorrow, I am going to see him tomorrow at three o'clock;" that plaintiff went to Frazier's office at the time thus indicated and discussed with Caldewey and Frazier the lack of progress that was being made on the building; that thereafter plaintiff called to see Frazier again and was referred to defendant's claim agent; that plaintiff went to see said claim agent about said contractor's failure to complete the work on said building and said claim agent asked and obtained from her the contract, bond and papers and told her to return; that she returned twice and said claim agent stated that he wanted to see Mr. Cushman about

the matter; that upon her next call plaintiff was confronted with said claim agent and defendant's attorney. Thereupon she employed counsel who testified at the trial that he had conferences with defendant's claim agent and counsel and that neither said anything to him with reference to plaintiff's failure to give notice, and that no claim was ever made by them that there was no liability because of failure of notice. The evidence further showed that mechanics' liens were filed against plaintiff's property; that plaintiff paid the Missouri Portland Cement Company $707.24 and the Reis Lumber Company $419.65 in settlement of lien claims, and paid cost bills in connection with lien claims in the sums of $20.05 and $5 and paid her counsel a fee of $100 for settling up these claims. The evidence further showed that plaintiff made diligent but unsuccessful efforts to find J. W. Caldewey, president of said construction company, and to get service upon said company; that the office of said company had been closed by the sheriff. The evidence further showed that plaintiff had never been repaid any part of the $8,750 in notes delivered by her to said company; that the building was never completed; that under date of March 6, 1924, her counsel wrote defendant advising it of the liens above mentioned and of the fact that plaintiff had delivered said deeds of trust and notes to the contractor pursuant to said building contract, and again called upon defendant to complete the building or indemnify her for damages sustained through failure of said contractor to complete the work. Plaintiff testified that she did not appoint an architect, that she had the option of having an architect or not and that she did not want one because Mr. Caldewey was a very good architect. The evidence also showed that the contractor had never arranged for the building loan as provided by said building contract, although plaintiff had asked that such be done; that plaintiff had never received any interest on her deeds of trust since she turned them over to said company; and that at the time defendant's bond was executed by Orr C. Frazier as defendant's attorney in fact the said Frazier was the secretary of said construction company.

There was substantial evidence that the cost of the work done by said contracting company was $1842; that the fair market value of constructing said building according to plans and specifications was $29,400, exclusive of cost of financing; that the reasonable charge for procuring a $18,600 building loan was $930. It was agreed that the reasonable time required to finish the building would have been three months; and that the fair rental value of each of the flats in the building was $110 per month, or a total rental of $440 per month for the building.

Defendant offered no evidence, and under the evidence submitted by plaintiff the jury returned a verdict for plaintiff in the sum of

$11,704 principal, and $2,083.64 interest, or the aggregate sum $13,-787.64.

Appellant's chief contention is that the building contract "contained two vital provisions: *First*, the supervision of the work by an architect or superintendent; and, *second*, payments only upon certificate as to satisfactory doing of the work."

Plaintiff's cause of action arose under the bond executed by defendant and defendant's liability is dependent upon the interpretation that should be given the bond and the building contract copy of which was thereto annexed. This bond was executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. It prescribed the terms of the bond and necessarily accepted the terms of the building contract against breach of which it undertook to indemnify defendant. Unlike a voluntary surety, a surety on such a bond is not a favorite of the law and the rule of *strictissimi juris* followed where voluntary sureties are concerned has no application in determining defendant's liability in this case. The bond and contract in this case are to be construed most strongly in favor of plaintiff and all ambiguities must be resolved against defendant. [Lackland v. Renshaw et al., 256 Mo. 133, 140, 165 S. W. 314; M. K. & T. Ry. Co. v. American Surety Co., 291 Mo. 92, 102, 236 S. W. 657; Dorr v. Bankers' Surety Co., 218 S. W. 398, 400.]

The obligation of defendant's bond is thus stated therein:

"The condition of this obligation is such, that if the Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect."

Subsequent language of the bond purports to limit this obligation by "Express Conditions, the performance of each of which shall be a condition precedent to any right of recovery hereon." These conditions are grouped under five heads. Under the first head it is provided:

"That in event of any default on the part of the Principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the Surety, by registered mail, at its office in the City of St. Louis, Mo., promptly and in any event within ten (10) days after the Obligee or his representative, or the Architect, if any, shall learn of such default; that the Surety shall have the right within thirty (30) days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract; shall also be subrogated to all of the rights of the Principal; and any and all moneys or property that may at the time of such default be due, or that there-

after may become due to the Principal under said contract, shall be credited upon any claim which the Obligee may then or thereafter have against the Surety, and the surplus, if any, applied as the Surety may direct.''

Provisions under the second and third heads are not relevant to contentions made on this appeal. Under the fourth head it is provided:

''That the Obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the Obligee to be performed; and shall also retain that proportion, if any, which such contract specifies the Obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, then ten per centum of such value), until the complete performance by the Principal of all the terms, covenants and conditions of said contract on the Principal's part to be performed;'' etc.

A provision under the fifth head is that ''the obligation of the Surety is, and shall be construed strictly as, one of suretyship only.'' Other provisions under the fourth and fifth heads bear no relevancy to contentions here made.

From the foregoing it is apparent that defendant's primary obligation under this bond is to indemnify plaintiff against any loss or damage directly arising by reason of the failure of the construction company to perform the contract, except in so far as defendant has limited its obligation by the conditions thus expressly written in the bond.

The only provision in the building contract relative to employment of an architect or other person for the purpose of supervising and certifying the work is as follows:

''1. (Contractor to Erect Buildings—Drawing and Specifications.) The contractor shall erect and build in a substantial and workmanlike manner, one four-family apartment building, to be erected on Lots Numbers 52 and 53 (in the DeMun Park), on N. Roseberry Drive, St. Louis County, State of Missouri, in accordance with the drawings and specifications signed by both parties hereto annexed and subject to the directions of an architect or any other person for the time being employed by the owner, at her option, for the purpose of supervising and certifying the work hereby agreed to be done, hereinafter called the architect.''

Appellant insists that the clause, ''at her option,'' in the foregoing paragraph, when read in connection with the frequent subsequent use of the word ''architect'' in the contract means that plaintiff's employment of an architect or other person for the purpose of supervising and certifying the work was contemplated; while respondent contends that it means that the employment of any person, architect or not, for such purpose was optional with plaintiff.

While references, subsequently appearing in the contract, to an "architect" might tend to support appellant's suggested interpretation of the somewhat ambiguous phraseology, we are bound by defendant's own interpretation thereof, if any appears, at the time the bond was given. Under the first head, above quoted, of the conditions of the bond it is stated that in event of any default on the part of the principal written notice thereof shall be delivered to the surety as therein provided "within ten (10) days after the Obligee or his representative, or the Architect, if any, shall learn of such default." This is an express interpretation by defendant of the building contract as leaving the employment of an architect or representative optional with plaintiff. Appellant, in effect, asks us to disregard this reference on the ground that it was merely a part of the printed form of defendant's bond. This is not a valid excuse. Notwithstanding defendant, for its own convenience used a printed form, the language employed was of its own choosing and must be taken as applicable to the building contract thereto annexed and expressive of defendant's own interpretation of the same. When the bond and building contract are interpreted together, as they must be, we cannot say that plaintiff's failure to employ an architect or other person to supervise and certify the work was a breach of "the terms, covenants and conditions of such contract on the part of the Obligee to be performed," and that defendant was thereby released from the obligation of this bond. It follows that certificate from an architect or such other person, where neither was employed, was not a condition precedent to plaintiff's payments on the contract price.

Appellant also contends that plaintiff's delivery to the contractor of said deeds of trust and notes secured thereby was violative of "the terms, covenants and conditions of such contract on the part of the Obligee to be performed," and that, therefore, defendant was released from the bond. The provisions of the building contract with reference to such delivery is as follows:

"The owner shall pay to the contractor in respect of the said work and materials, the sum of twenty-eight thousand one hundred ($28,100) dollars, subject to additions and deductions as hereinbefore provided, and only upon certificates of the architect. The contractor agrees to accept from said owner, part of said amount in lieu of cash and as payment, one deed of trust for the sum of five thousand ($5000) dollars and a second deed of trust in the sum of forty-five hundred ($4500) dollars. The contractor further agrees to negotiate and obtain a loan for the owner, against said building, in a sufficient amount to cover the balance, eighteen thousand six hundred ($18,600) dollars, necessary to complete said building. The

owner is to transfer, convey and assign said deeds of trust and to pay the balance out of said loan to be obtained as aforesaid, as said work is carried on, between the 1st and 10th of each month for the work and material furnished by the contractor the previous month, after the architect shall certify that said work and materials has gone into said building in a satisfactory manner.

"The final payment shall be made within thirty days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued, provided work is accepted."

We have already held that certificate of an architect was not a condition precedent to payment under the terms of this contract and the facts in evidence. By the foregoing provisions plaintiff was bound to transfer, convey and assign said deeds of trust to the contractor and pay the balance of the contract price out of a loan on the property to be obtained by the contractor, "as said work is carried on, between the 1st and 10th of each month for the work and material furnished by the contractor for the previous month," etc. The proceeds of the loan to be procured to cover the balance of the contract price were susceptible of such monthly payment, but the indebtedness secured by said deeds of trust was not. The contractor's agreement to accept this property in lieu of cash meant that the plaintiff should deliver it in kind, at least $5,000 of which, according to the evidence, was in the form of a single note, and the terms of the contract contemplate delivery of this property to the construction company before it procured a loan on the real estate to cover the "balance." It does not appear that the notes secured by these deeds of trust were to be delivered in any such monthly installments, or that such delivery on the part of plaintiff was required by "the terms, covenants and conditions of such contract on the part of the Obligee to be performed," and the terms of the bond imposed no limitation on the obligee in the matter of making payments except that she should "retain that proportion, if any, which such contract specifies the Obligee shall or may retain that of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, than ten per centum of such value), until the complete performance by the Principal of all the terms, convenants and conditions of said contract on the Principal's part to be performed." The contract contains no provision for the retention of any part of the cost of the work until completion, except that final payment should be made within thirty days after completion of the work, provided the work is accepted. No payment, other than that represented by delivery of said deeds of trust, was made, and there is, therefore, no controversy concerning excessive subsequent payments.

Counsel for appellant also say:

"The court erred in giving the first instruction for plaintiff, because it submitted, by such instruction to the jury, a finding that the respondent had substantially performed all her duties and obligations under the contract and the bond.

"Under the undisputed testimony this was a question of law for the court, and the court should have declared the law, as requested by appellant's instruction numbered 3."

Instruction number 1, given at the request of plaintiff, is as follows:

"The court instructs the jury that if you find and believe from the evidence that J. W. Caldeway Construction Company executed the contract mentioned in the evidence, for the construction of a four-family apartment building on lots 52 and 53 of De Mun Park, in St. Louis County, Missouri, for plaintiff, and that thereafter said Caldeway Construction Company entered upon the performance of said contract and began the construction of said apartment building, and that said J. W. Caldeway Construction Company failed to construct said apartment building according to the terms of said contract and failed to complete the construction of said apartment building, and failed to pay for materials used in the construction thereof, as provided by said contract, and failed to procure for plaintiff a loan as provided by said contract, and that plaintiff requested said Caldeway Construction Company to perform its contract, and that plaintiff substantially performed the duties and obligations imposed upon her by said contract; and if you further find and believe from the evidence that said J. W. Caldeway Construction Company, as principal, and defendant Independence Indemnity Company, as surety, executed the surety bond mentioned in the evidence, and that plaintiff paid to said defendant Independence Indemnity Company a premium therefor, and that after default by said J. W. Caldeway Construction Company in any of the particulars hereinbefore mentioned in the performance of the contract for the construction of the apartment building hereinbefore mentioned, if any such default you find was made in the performance thereof, plaintiff notified defendant thereof, and requested that defendant complete said apartment building according to said contract or indemnify her against loss, if any, by reason of the default in the performance of said contract, if any, and that plaintiff has substantially complied with the terms and provisions of said bond, and that defendant failed and refused to complete said building, and failed and refused to indemnify plaintiff for her loss and damage, if any, then your verdict must be for plaintiff, unless you also find and believe that plaintiff failed promptly to give to defendant a written statement of the particular facts showing the alleged default on the part of J. W.

Caldeway Construction Company and the date thereof, within ten days of such default, if any you find there was.

"And the court further instructs the jury that, even though the jury should find from the evidence that plaintiff failed to promptly give to defendant a written statement of the particular facts showing the alleged default on the part of J. W. Caldeway Construction Company and the date thereof, within ten days of such default, if any you find there was, yet, if you further find and believe from the evidence that plaintiff notified defendant in writing and in person that said Caldeway Construction Company was in default and requested defendant to complete the building or to indemnify her against loss, and that at said time Henry J. Deibel was attorney for defendant, and that said attorney thereafter conferred with plaintiff concerning her claim against defendant and investigated said default and requested of and procured from plaintiff the plans and specifications for the construction of the building mentioned in the evidence, and undertook to determine the nature and extent of the said default, and that neither defendant or its agent or attorney objected to the sufficiency of or failure of the notice of default under said bond, then defendant waived the requirement of the bond for the giving of the written statement hereinbefore mentioned, and plaintiff's failure to furnish such written statement, if such you find there was, would not affect plaintiff's right to recover of defendant herein."

Instruction number 3, requested by defendant and refused by the court, is as follows:

"The court instructs the jury that the building contract between plaintiff and the Caldeway Construction Company contemplated that the plaintiff should name or appoint an architect or employ some other person for the purpose of supervising and certifying the work to be done; and said building contract (together with the bond sued on) required the plaintiff to make no payment to the Caldeway Construction Company on account of the contract price, except upon certificate of the architect, or of the person employed by plaintiff to supervise, that the work and materials for which payment was to be made had gone into the building in a satisfactory manner; and you are further instructed that payments by way of deeds of trust were subject to the requirement of certificate, as immediately aforesaid, as well as payments in money."

The trial court's action in giving the first and refusing the second of the instructions above quoted clearly indicated a finding on its own part that plaintiff had substantially performed all the duties and obligations under the contract and bond, and defendant is in no position to complain if the instruction given imposed a greater burden upon plaintiff than the law required.

It is also urged that the court erred in giving instruction number 2, dealing with the measure of damages, as follows:

"If, under the evidence and under the instructions given you, you find the issues in favor of plaintiff, you should find in the penalty of the bond sued on in this case, viz., in the sum of twenty-eight thousand one hundred dollars ($28,100), and you should assess her damages at such sum as you find and believe from the evidence is the actual and reasonable loss sustained by plaintiff as a direct result of the failure of J. W. Caldeway Construction Company to perform the contract mentioned in the evidence, and, in determining plaintiff's loss, if any, you may take into consideration the following mentioned:

"(1) The actual value, if any, of the deeds of trust and notes delivered and transferred by plaintiff to J. W. Caldeway Construction Company, if you find she so did, less the actual and reasonable value of work and materials which actually entered into the construction of the building, and you will allow her interest on such sum, if any, to which you find she is so entitled, at the rate of six per cent per annum from the 20th day of March, 1925 (the date of filing this suit), to this day;

"(2) The reasonable amount paid by her, if any, for the satisfaction and settlement of mechanics' liens and claims of materialmen for material furnished for said building, together with such sums, if any, as you find and believe from the evidence plaintiff reasonably expended in payment of costs of court and for legal services in connection with the payment and settlement of such mechanics' liens, together with interest on such sums as you may find she is entitled to recover therefor, at the rate of six per cent per annum from the date of institution of this suit, viz., March 20, 1925, to this day;

"(3) The reasonable rental value, if any, of a building erected according to the plans and specifications in evidence for the period of time which you may find and believe from the evidence would have been reasonably necessary to complete said building after January 15, 1924 (the date specified in the contract read in the evidence for the completion of said building), together with interest thereon at the rate of six per cent per annum from the date of the institution of this suit, viz., March 20, 1925, to this day;

"(4) Such sum, if any, as you find and believe from the evidence equals the difference between the contract price for said building, including the cost of procuring the building loan of eighteen thousand six hundred dollars ($18,600), viz., twenty-eight thousand one hundred dollars ($28,100), and the reasonable market value of such completed building as of January 15, 1924 (the date specified in said contract for completion thereof), plus the reasonable cost of procuring such building loan, and you will allow plaintiff interest on such

sums, if any, to which you find she is so entitled, at the rate of six per cent per annum from the 20th day of March, 1925 (the date of the institution of this suit), to this day.''

Appellant's only specifications of error with reference to this instruction relate to elements set forth in paragraphs 3 and 4 thereof, concerning which counsel say that "the reasonable rental value of the building, in the event of total abandonment of the contract, is no proper part or measure of damages," and "the reasonable market value of the completed building has nothing to do with the matter whatsoever." In 9 Corpus Juris 812, the rule is thus stated with reference to loss of rents:

"In case of failure to perform, the measure of damages is the difference between the contract price and the fair cash market price or value of the doing of the work contracted for, together with loss of rents for such reasonable time after the time the building should have been completed under the contract as will permit the owner to complete the building."

The function of market value in fixing damages is stated in In re Carrier, 21 Fed. (2d.) 589, 590, where the bankrupt undertook to do certain construction work for $9,000, started excavation and then abandoned the work. A claim was filed against the estate by the creditors and the court held that the referee was in error in allowing a sum sufficient only to refill, and said that the proper rule was as follows:

"The rule of damages applicable to a situation such as here presented would give to the creditor the right to recover the difference between the contract price of $9,000 and the fair market value of the work if it had been done according to contract, and it makes no difference that the owner elected not to complete the work according to the original plans and specifications. [American Surety Co. of New York v. Woods (C. C. A.), 105 Fed. 741; Newton v. Consolidated Construction Co., 184 Mich. 63, 150 N. W. 348; Simons v. Wittmann, 113 Mo. App. 357, 88 S. W. 791.]"

We find no contrary doctrine in the authorities cited under this head by appellant.

The case was apparently tried without reversible error and the judgment is affirmed. All concur.