**FEUTZ et al. v. MASSACHUSETTS
BONDING & INS. CO. et al.**

No. 5873.

United States District Court
E. D. Missouri, Eastern Division.

July 27, 1949.

Salkey & Jones, Wilbur B. Jones and Arthur J. Freund, of St. Louis, Mo., for plaintiffs.

Tucker, Murphy, Wilson & Siddens and John Murphy, of Kansas City, Mo., Walther, Hecker, Walther & Barnard and Herbert E. Barnard, of St. Louis, Mo., for defendant and third-party plaintiff.

Moser, Marsalek, Carpenter, Cleary & Carter and G. W. Marsalek, of St. Louis, Mo., for third-party defendant.

HULEN, District Judge.

Memorandum on (A) motion to have the verdict and the judgment entered thereon set aside and to have judgment entered in accordance with motions for a directed verdict offered at the close of the plaintiffs' evidence and at the close of all the evidence and, in the alternative, for a new trial, and (B) motion for a new trial on third-party complaint.

From a jury verdict of $40,000.00 for plaintiffs, defendant Massachusetts Bonding and Insurance Company[1] seeks relief, first, by joint and alternative motion under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., and if overruled, second, by motion for a new trial on its third-party complaint, which resulted in dismissal of third-party defendant. The first motion is based on construction of Surety's bond and presents the question whether the Surety is liable only to plaintiff Feutz for $15,000 (which Surety does not contest) or to plaintiffs Courtney and Mundy for a further sum of $25,000, as assignees of Feutz. If liable, Surety seeks contribution from third-party defendant as co-surety.

Execution and delivery of Surety's bond originated with a transaction between Harry J. Murphy[2], Principal in the bond, and plaintiff Feutz, about March 18, 1947. At that time the Principal interested Feutz in advancing $40,000 to him, to be used in purchasing combines. Murphy then had a bond of third-party defendant Maryland Casualty Company[3], obtained before he approached Feutz. This bond covered an employer-employee relationship. Murphy exhibited the bond to Feutz as evidence he would be protected in any money advanced. Between March 18 and March 27 Feutz advanced $15,000, Courtney $15,000, and Mundy $10,000, to Murphy in reliance on the bond of Maryland. Murphy and Feutz entered into a contract, dated March 24, 1947, covering the transaction. Following this contract and on the same sheet of paper was added an assignment to Courtney and Mundy of fractional interests in the contract, in proportion to the money advanced by them. A copy of this contract, with assignments, all executed, was sent to Murphy March 31. He acknowledged receipt April 1, 1947. (Plaintiffs' Exhibit "O")

On April 23, 1947 Murphy wrote from his home in Tarkio, Missouri, to Surety's agent in Kansas City. This letter (Defendant's Exhibit 5) "Inclosed * * *" (the) original "agreement" with Feutz dated March 24, 1947 and asked for "an honesty bond concerning this contract for $65,000". The letter also advised Surety the Maryland bond was "over on the amount" Maryland could write for Murphy. The letter also referred to other bonds of like kind Murphy would need. With the contract between Murphy and Feutz before him Surety's agent, on April 24, proceeded to write the bond sued on, dating coverage back to "18 day of March, 1947". Surety's agent mailed the bond to Murphy without comment. April 26, Murphy telegraphed Feutz he was sending a "new bond"—"better bond" than the one they had, and requesting return of "old one" of Maryland. On May 5 Murphy, after signing as Principal the bond sued on,

---

[1] Herein referred to as "Surety".
[2] Herein referred to as "Principal".
[3] Herein referred to as "Maryland".

420

mailed it to Courtney, one of Feutz' assignees.

The last of June, 1947, the Principal defaulted. Later the Surety instituted bankruptcy proceeding against its Principal. It appears from pleading in that action that by July 1947 Surety was on numerous bonds as Surety for Murphy. Plaintiffs made demand on Surety under its bond. Surety admitted liability to Feutz for $15,000 but refused to pay unless released by all plaintiffs. This suit resulted on the issue—does the bond of Surety cover the loss of assignees Courtney and Mundy due to default under the contract[4] between Murphy and Feutz?

I. To sustain its plea for a directed verdict, Surety relies on and claims that the reference in its bond to the March 24 contract, i. e.,

---

[4] "Agreement

"This agreement made and entered into this 24th day of March 1947 by and between Harry J. Murphy of Atchison County, Missouri, Party of the First Part and W. F. Feutz of St. Louis County, Missouri, Party of the Second Part.

"Whereas, the Party of the First Part has an opportunity to purchase certain farm machinery designated as twenty-one (21) new fourteen foot self propelled Massey Harris combines, complete with all accessories, and also has an opportunity to resell same at a profit, and

"Whereas, in order to procure additional funds with which to purchase said combines, has induced the Party of the Second Part to join him in the purchase of said farm machinery and furnish a portion of the funds necessary to purchase same, and,

"Whereas the Party of the Second Part has agreed to furnish Forty thousand dollars, ($40,000.00) of the Eighty-four thousand ($84,000.00) necessary to complete the purchase of the 21 above mentioned combines.

"Now Therefore, Know All Men By These Presents, that in consideration of the premises and of the sum of One Dollar paid by the Second Party to said First Party, and of the sum of One Dollar paid by the Second Party to said First Party, the receipts of which are both hereby acknowledged, the said First Party hereby agrees to purchase the farm machinery above described from certain sources known to him and to resell same in order that a profit may be realized.

"The Party of the First Part further agrees that he will not use any or any portion of the funds supplied by the Second Party for any purposes other than the purchase of the aforesaid farm machinery. Said purchases to be handled only on sight drafts being drawn by the sellers thereof with bills of lading attached, and the sales to be made only to solvent purchasers and shipment to be made by drawing of drafts with bill-of-lading attached.

"As further protection to the Party of the Second Part the Party of the First Part hereby agrees to allow the surety bond issued by the Maryland Casualty Company of Baltimore in the sum of Sixty-five thousand ($65,000.00) to be used by said Second Party, or his assigns if any part of his interest in this agreement is assigned to someone else, to cover any losses as specified therein, said bond being dated March 18th, 1947.

"The parties hereto specifically agree that their relations in this transaction is not that of a co-partnership and that it is not their intention to form a partnership but that their relationship is that of joint adventurers.

"The Parties hereto agree that all profits or losses arising from this transaction shall be borne equally, one-half to the First Party and one-half to said Second Party, or his assigns.

"In Witness Whereof, the parties hereto have set their hands and affixed their seals this March 24th, 1947, binding themselves, their heirs or assigns, each copy of the triplicate agreement shall for all purposes be considered an original.

"(Signed) Harry J. Murphy
"Party of the First Part.

"(Signed) W. F. Feutz
"Party of the Second Part.

"In consideration of the sum of Ten Thousand dollars ($10,000.00) being advanced to W. F. Feutz by J. C. Mundy of Mexico, Mo., and fifteen thousand dollars ($15,000.00) by W. R. Courtney of Mexico, Mo., I hereby assign to J. C. Mundy and W. R. Courtney a five-eighths interest in this agreement, one-fourth to J. C. Mundy and three-eighths to W. R. Courtney, which assignment they hereby agree to accept with all the terms and conditions mentioned therein.

"(Signed) W. F. Feutz
"Assignor

"(Signed) J. C. Mundy
"Assignee

"(Signed) W. R. Courtney
Assignee"

"We Harry J. Murphy, of Tarkio, Missouri, as principal, and the Massachusetts Bonding And Insurance Company, of Boston, Massachusetts, as Surety, bind ourselves to pay W. F. Feutz, of St Louis County, Missouri, hereinafter called the 'Obligee', such direct loss not exceeding Sixty-five Thousand & no/100 ($65,000.00) Dollars as the Obligee shall have sustained of money or other personal property belonging to the Obligee, or for which the Obligee is responsible, by any act or acts of Fraud, Dishonesty, Forgery, Theft, Larceny or Embezzlement on the part of the Principal directly or through connivance while in the performance of joint Adventures Agreement dated March 24, 1947, which provides that the Obligee shall furnish Forty Thousand & No/100 Dollars for the Principal to use in purchasing twenty-one combines therein described and that said Principal shall not use any portion of aforedescribed funds for any purposes other than the purchase of said combines, during the period commencing at twelve o'clock noon on the 18th day of March 1947, and ending with the termination of this suretyship." "is (solely) to define and establish the position, * * * or trust of the Principal" for which his fidelity is insured by the bond.

Plaintiffs' position, which we adopted in submitting the case, is that under the March 24th contract, together with the bond, and letter of Murphy to Surety ordering it, and particularly the following paragraph in the March 24th contract:

"As further protection to the Party of the Second Part the Party of the First Part hereby agrees to allow the surety bond issued by the Maryland Casualty Company of Baltimore in the sum of Sixty-five thousand ($65,000.00) to be used by said Second Party, or his assigns if any part of his interest in this agreement is assigned to someone else, to cover any losses as specified therein, said bond being dated March 18th, 1947" plaintiff Feutz could assign a portion of the contract, and that plaintiffs Courtney and Mundy, as his assignees of a part interest in the contract, are covered by the bond of defendant.

In submitting the case to the jury we held it was for the Judge to interpret the March 24th contract, its partial assignment clause, and the bond in suit. Our holding was based on the conclusion—a reasonable interpretation of the instruments evidenced, plainly and without ambiguity, the intent of Surety and Murphy, at time the bond was written, that the bond should cover the assignees of Feutz, as well as Feutz, against misapplication of funds by Murphy under the March 24th contract.

The Maryland bond for $65,000.00 is identified in the March 24th contract as for the use of any assignees of part interest in the contract, as well as Feutz. In the letter from Murphy (Defendant's Exhibit 5) to the Surety, which orders the bond in suit, reference is made to the bond of Maryland showing clearly the bond ordered is to take the place of the Maryland bond. The Surety so understood. It does not now deny it. Otherwise there is no explanation for Surety dating back its bond coverage from "24th day of April, 1947", date of bond, to "period commencing at twelve o'clock noon on the 18th day of March, 1947", date of Maryland bond, as given in the March 24th contract. Surety offered evidence the March 24th contract was enclosed with Murphy's letter of April 23rd to it. By the letter Murphy requested a bond "concerning[5] * * * this (March 24th) contract". Surety's agent testified on direct examination that he used the contract to write the bond. It was on the desk "before" the agent when he wrote the bond. The agent had only the letter and contract as sources of information to write the bond (See testimony of witness Packwood). Only one paragraph of the contract makes any reference to a bond. The same paragraph is the sole reference to assignment. We quoted it above. Under the March 24th

---

[5] " 'Concern,' means to pertain, relate, or belong to; be of interest or importance to; have connection with; to have reference to; to involve; to affect the interest of. * * *" People v. Photocolor Corp., 156 Misc. 47, 281 N.Y.S. 130, 131.

contract it would be a breach of it for Murphy to substitute a bond which would protect only Feutz, and not Feutz' assigns, absent further agreement with the assignees to that effect. This the Surety knew when it wrote the bond. Surety further offered evidence establishing that it wrote the bond, with its lengthy reference to the contract, which we hold. was to identify the contract the bond "concerned" or covered, and mailed it back to Murphy *without comment*. The Surety wrote and delivered the bond in suit with admitted knowledge *its Principal had agreed with Feutz that the same bond* protecting Feutz against Principal's default *would be "used" by assignees and for same purpose.* Why was Surety writing a bond for $25,000.00 in excess of limit of liability of Murphy? Plainly because its bond was to duplicate and be substituted for the Maryland bond. With actual notice received before executing its bond of the representation of its Principal that the bond under the March 24th contract would be for the use of Feutz' assigns, not until default by the Principal did the Surety attempt, or advise any one, it desired to separate assignor and assignees from liability for default of its Principal under March 24th contract, and restrict its liability solely to the assignor.

We think the intent and purpose of the Principal and Surety at time bond was executed is clearly manifest by the documents referred to and that only one conclusion can be drawn from them. The right of Feutz to make a partial assignment of his interest in the March 24th contract, and that such fractional assignment legally transferred to the assignees the interest specified in the assignment, is not questioned by Surety. Neither is the fact that Feutz had assigned partial interest to Courtney and Mundy before the bond was written, and coverage dated back. The contract uses the word "is" in referring to assignments, which could refer to past as well as future.

Assignment by Feutz of fractional interests in the March 24th contract with Murphy to plaintiffs Courtney and Mundy did not change in the slightest the risk or hazard against which Surety had con-

tracted. Surety does not claim it did. Whether the money came from Feutz or his assignees had no effect on Murphy's default or his inclination to commit one. Its sole effect was to alter the persons who had an interest in recovery in case of default (7 Contracts, A.L.I. Sec. 151).

Commenting on construction of a contract in this class of case, and one where there was a departure from strict terms of the bond (which we do not think is the case here), Judge Van Valkenburgh said, in Hartford Accident & Indemnity Co. v. Federal Bond & M. Co., 8 Cir., 59 F.2d 950, loc. cit. 954:

"There are other reasons why this contention of appellant cannot be indulged. It is a compensated surety, and to it the rule of strictissimi juris does not apply. It is necessary that it must show that a technical departure from the strict terms of the surety contract, if there has been such departure, has caused it to suffer injury."

This seems to be the general. rule. See Pickens County v. National Surety Co., 4 Cir., 13 F.2d 758, loc. cit. 762:

"It is well settled that the rule of strictissimi juris, ordinarily applied in relief of an individual surety, is not applied in case of compensated sureties, and that where a bonding company, for a monetary consideration, has insured against failure of performance of a contract, it must show that it has suffered some injury by reason of departure from the strict terms of the contract, before it can for that reason be discharged from its liability. Atlantic Trust Co. v. Laurinburg, 4 Cir., 163 F. 690, 90 C.C.A. 274; Guaranty Co. v. Pressed Brick Co., 191 U.S. 416, 24 S.Ct. 142, 48 L. Ed. 242; Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; National Surety Co. v. Lincoln County 9 Cir., 238 F. 705, 151 C.C.A. 555; American Bonding Co. v. United States to Use of Francini 3 Cir., 233 F. 364, 147 C.C.A. 300; note in 12 A.L.R. 382, and cases cited."

When a part of Feutz' contract with Murphy was assigned, to the extent of the as-

signment, the assignees had the same right in the contract as Feutz had prior to assignment. To the extent of the assignment the rights of Feutz were extinguished. By the assignment Feutz' interest became $15,000.00 instead of $40,000.00. It was that sum when the bond was written. Feutz never did have a $40,000.00 interest in it. The bond was written by Surety with actual knowledge that reduction by assignment of Feutz' interest could be made (7 Contracts A.L.I. Sec. 150).

■ Surety concedes it has no defense to the claim of Feutz, the assignor. Under the facts found by the jury it stands in no different position as to the assignees of Feutz.

Assignment of fractional parts of the contract, under these circumstances, carried with it to the assignees the obligation of the Principal and Surety under the bond.

We have been cited to no case precisely like the present one and our search has revealed none. The bond in suit was not a personal bond in so far as Feutz was concerned. The source of money advanced to Murphy did not affect the risk taken by the Surety as to Murphy's honesty in any way. This is shown first by failure to mention Feutz by name in letter of Murphy ordering the bond. It simply says this "man" is furnishing money. Surety on receipt of letter wrote the bond without any inquiry as to Feutz. One test that it was not a personal bond in so far as "obligee" was concerned lies in lack of any reason for Surety to inquire as to who Feutz was. All the Surety was interested in was what Murphy did with money supplied under the contract, regardless of who furnished it. We therefore think the general rule applies, particularly so in view of the terms of the bond with reference to the March 24 contract, and the terms of the March 24th contract with reference to assigning an interest. See 32 C.J. 1240; 45 C.J.S., Insurance, § 410; 50 C.J. 202 (assignees); Rendelman v. Levitt, Mo.App., 24 S.W.2d 211, loc. cit. 213:

"Generally speaking, an insurance policy may be assigned without the consent of the insurer, where the contract is not considered a personal contract between the insurer and the insured, and the assignment is not expressly forbidden by the terms of the policy. * * * The cases hold in general terms that a policy of fire insurance is a personal contract, and is not assignable without the assent of the insurer, that much depends upon the character of the owner as a man of prudence, integrity, and watchfulness, and that these considerations enter into the contract. This appears to be the settled rule in case of an assignment of a policy coupled with a transfer of the property insured. A life insurance policy is not regarded as a personal contract, and may be assigned without the assent of the insurer. The same is true of a marine insurance policy. New York Life Ins. Co. v. Flack, 3 Md. 341, 56 Am. Dec. 742, loc. cit. 748.

"A compensation policy, such as is involved here, is peculiarly personal. In the issuing of such a policy much depends upon the character of the insured employer relative to his integrity, prudence, caution, and ability, in the management and operation of his business, and in the selection and supervision of his employees."

In American Surety Co. of New York v. United States, 10 Cir., 112 F.2d 903, loc. cit. 906, a bond was given to secure performance of a lease. The lease was assigned. As to effect on Surety of such assignment the Court held:

"Where a bond is given to guarantee the performance of the obligations of a lease, and the lease, by its terms, is assignable, and the bond contains no provision relieving the surety in the event of an assignment, the surety is not discharged by an assignment made without its consent."

Assignment of a judgment carries with it right of action in name of assignee on the appeal bond. See Stewart v. Miles, 105 Mo.App. 242, 79 S.W. 988. Under the law of Missouri claims arising on attachment bonds are assignable. See State v. Heckart, 49 Mo.App. 280; State v. McHale, 16 Mo.App. 478; and Waterman & Ryan v. Frank et al., 21 Mo. 108. In George et al. v. Tate, 102 U.S. 564, 26 L.Ed. 232, an instruction that assignment of a judgment would also transfer a bond to secure it,

was held "in exact conformity to the law upon the subject". It was held in Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 S.Ct. 140, 55 L.Ed. 72, that assignment of claims for material against a contractor carries the protection of the bond. Assignment of interest in an estate carried with it "obligation of the surety company given to secure the faithful performance * * *", was the holding in Brainerd, Shaler & Hall Quarry Co. v. Brice, 250 U.S. 229, 39 S.Ct. 458, 460, 63 L.Ed. 951, loc. cit. 953. In United States v. Rundle, 9 Cir., 100 F. 400, loc. cit. 403, the Court said:

"The general rule is that an assignment of a debt carries with it the security."

Under the assignment of Feutz, instead of Murphy owing Feutz $40,000.00, Murphy owed the same to the plaintiffs in proportion to the assignments made by Feutz. The relationship of Murphy to his Surety had not been changed in any manner by such change in Murphy's creditors on the March 24th contract. The Principal and Surety knew the March 24th contract contained an express grant of right of Feutz to assign. The bond must be read in light of such written authority. See Springfield Lighting Co. v. Hobart, 98 Mo. App. 227, 68 S.W. 942, loc. cit. 944.

There is no evidence that Murphy at time of securing and signing bond with Surety intended to defraud plaintiffs or substitute a bond contrary to his contract obligation. On the contrary, the uncontradicted evidence is that in good faith he was doing all he could to comply with his contract in this respect and revealed to Surety the extent of his contract commitment on a bond. As Judge Sanborn said in considering the purpose for which a bond was given, in American Bonding Co. v. Pueblo Inv. Co., 8 Cir., 150 F. 17, loc. cit. 27–28, it is "unlikely" one would have entered into a bond contrary to his promise. Quoting from Judge Sanborn's opinion, the intention of the parties as found

"must control and be enforced without regard to inapt expressions and technical rules of interpretation, unless that intention is directly contrary to the plain sense of the binding words of the agreement."

And such exception does not here exist. Such an interpretation

"renders the agreement reasonable, equitable, probable, and such as prudent men would naturally make, * * *."

If we are correct in our conclusions, Surety taking no exception to the manner of submission otherwise, its motion for a directed verdict must be overruled.

II. We pass to the issue—was the contract one made for the benefit of third parties? Surety would confine consideration of the answer solely to its bond terms and no other fact or circumstance in the case, even the testimony offered by it. A premise for solution of this dispute must be that the decisive facts are not contradicted.

At the outset we will dispose of two propositions urged by Surety which we think without authority in law: One, that Mundy and Courtney are only collaterally and incidentally benefitted by the bond and therefore cannot enforce it. Kansas City Life Ins. Co. v. Rainey, 353 Mo. 477, 182 S.W.2d 624, 155 A.L.R. 168. If Mundy and Courtney have any rights under the bond it is as parties for whose direct benefit, *as assignees,* it was made. To the extent of their assigned interest they stand in the shoes of Feutz. Second, the rule of strictissimi juris is invoked by Surety. The law on this subject appears plain. The Supreme Court of Missouri, in Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S.W.2d 162, 164, 76 A.L.R. 931, states it:

"This bond was executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. It prescribed the terms of the bond and necessarily accepted the terms of the building contract against breach of which it undertook to indemnify defendant. Unlike a voluntary surety, a surety on such a bond is not a favorite of the law, and the rule of strictissimi juris, followed where voluntary sureties are concerned, has no application in determining defendant's liability in this case. The bond and contract in this case are to be construed most strongly in favor of plaintiff and all ambiguities must be resolved against defendant."

Even the rule Surety contends for does not go the extent Surety uses it. See United States v. American Surety Co., 200 U. S. 197, 26 S.Ct. 168, 170, 50 L.Ed. 437, loc. cit. 440, where the Supreme Court said:

"And the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract in the light of the language used and the circumstances surrounding the parties. Ulster County Sav. Inst. v. Young, 161 N.Y. 23, 30, 55 N.E. 483."

Surety also insists the bond be accepted and interpreted as a "fidelity" bond and not a "performance" bond. If the latter, then the law seems plain that the contract of March 24th, without further showing, must be construed as a part of the bond; if the former, then resort to the March 24th contract, in interpreting the meaning of the bond, depends on whether the terms of the bond are free from ambiguity and therefore admit of no outside aid in its interpretation.

The bond was written by Surety for this particular occasion. We have been cited no case and our search has revealed none precisely like the present one. We think the bond partakes of features of both a fidelity and a performance bond. The bond uses terms, referring to conduct of Feutz, as conditions precedent to liability, *"while (Murphy was) in performance of Joint Adventure Agreement dated March 24, 1947"*. If, as Surety asserts, its reference to the contract was restricted by terms of the bond, solely to define the position "for which his (Murphy's) fidelity is insured" by the bond, reference to the contract could have stopped with the words last quoted. But reference to the contract did not stop there. It proceeds to describe how much money Feutz shall furnish to Murphy and what Murphy is to use the money for. The only performance called for by the contract between Murphy and Feutz was that Murphy would do certain things with the money Feutz furnished. Performance in that way was all the contract and bond required. Failure to so perform gave plaintiffs a right of action for breach. Whether the bond is strictly a fidelity bond or a performance bond is a question not free from doubt in our mind. But under the view we take of the facts of this case, and applicable law, this question has little or no bearing.

The general rule on interpretation of the bond (and March 24th contract) should not provoke controversy. The Missouri Supreme Court, in Missouri, K. & T. Ry. Co. v. American Surety Co., 291 Mo. 92, 236 S.W. 657, loc. cit. 660, gives it fully:

"* * * the general rule that sureties are the favorites of the law and that contracts made by them should be construed most strongly in their favor has no application here. * * * Here the consideration moves to the defendant. Its obligations are therefore to be construed like other contracts, in accordance with the reasonable intent of the parties as plainly indicated by their terms. (Cases cited.)

"Of first consideration is the language of the bond itself, which must, of course, be read in its entirety. Ambiguities therein, if any, are, as in construing a policy of insurance, to be resolved against defendant. (Cases cited.) The meaning of the bond, as indicated by its words, having been ascertained, we seek, by placing ourselves as nearly as possible in the attitude of the parties at the time, to determine their intentions and effectuate their purpose. In ascertaining such intentions, not only will the language of the bond be taken into consideration, but the situation and circumstances surrounding the parties at the time the obligation was made. The intentions ascertained, the object or purpose sought to be effectuated should not be defeated by a narrow interpretation or one favorable to the defendant, if there be another construction equally admissible under the terms of the bond; or, stated somewhat conversely, if the bond is fairly open to two constructions, one of which will uphold while the other will defeat the plaintiff's claim, that most favorable to it should be adopted, provided, of course, in so doing the manifest intention of the parties is not nullified. (Cases cited.)"

There must be added, See City of Sedalia, Mo. v. American Surety Co., 8 Cir., 82 F.2d 112, loc. cit. 114:

"The condition precedently necessary to the application of this rule is ambiguity. * * *"

Standing alone we find the bond is ambiguous—and in more than one respect.

Why is coverage under the bond antedated to March 18th? The reference in the bond to contract of March 24th only increases seriousness of the question, when coverage is dated back six days prior to March 24th. What relation does the bond cover during that six day period? Examine every word in every sentence in the bond and the question remains unanswered. We go to the facts and circumstances surrounding execution of the bond. The Surety's agent had two instruments before him at that time—Murphy's letter ordering the bond, and contract of March 24th. Murphy's letter is silent on the subject. The March 24th contract gives us the same information Surety's agent had and gives a simple and plausible explanation for the March 18 date. It was date of the Maryland bond and Surety's agent was thereby writing his bond to duplicate coverage time of the Maryland bond. The conclusion is inescapable that the exact sentence from which Surety's agent got his information that the Maryland bond was dated March 18th also gave him actual notice the Maryland bond was believed by Feutz to cover "his (Feutz') assigns" of an interest in the March 24th contract. Surety proceeded to write the bond and mail it to Murphy without restrictions with reference to any assigned interest. We conclude any reasonable person would believe from these facts and circumstances Surety's bond protected "assigns" of interest in the March 24th contract.

Why was the bond written for $65,000.00, when the money to be furnished was $40,000.00? This excess cost Murphy $250.00 in premiums. As Murphy was only getting $40,000.00 under the March 24th contract, some substantial reason must exist for this expenditure of $250.00 by Murphy. The bond itself sheds no light on the subject. Reference to the March 24th contract gives a full explanation. Again it was to duplicate the coverage of the Maryland bond in amount. Again that information comes from one sentence in the contract of March 24th and that sentence reads as follows:

"As further protection to the Party of the Second Part the Party of the First Part hereby agrees to allow the surety bond issued by the Maryland Casualty Company of Baltimore in the sum of Sixty-five thousand ($65,000.00) to be used by said Second Party, or his assigns if any part of his interest in this agreement is assigned to someone else, to cover any losses as specified therein, said bond being dated March 18th, 1947."

Shall Surety be permitted to use and extract all substance that is for its benefit from this vital sentence of the March 24th contract and by silence escape responsibility for the remainder of the sentence, containing benefits that were clearly a part of the consideration for which Murphy was paying a premium? Elementary principles of law or equity would deny an affirmative answer to this question, in our opinion.

There are other ambiguities which, when the bond is considered alone, call for explanations. Why was the provision placed in the bond that the defendant would be liable for "such direct loss" as Feutz might sustain "in money" "belonging" to Feutz, as obligee "or for which" Feutz "is responsible". There is nothing in the bond to determine conclusively the coverage of the bond. It is not plain.

Go again to the facts and circumstances, and we find the bond, taken with the contract of March 24th, gives a clear and definite boundary to Surety's liability under the bond. The money to be advanced is $40,000.00. It may be advanced by Feutz or his assigns. Such we think presents the only fair conclusion deducible from the bond and all facts and circumstances as to limit of coverage. It was extended to and limited to those who furnished the $40,000.00, either Feutz or his assigns. It was stated, in Franz v. Buder, 8 Cir., 34 F. 2d 353, loc. cit. 355:

"considerable liberality is exercised in construing designations of obligees in bonds, so long as the intent of the parties is clear. Van Winkle v. Blackford, 28 W. Va. 670; Fellows v. Gilman, 4 Wend. (N. Y.) 414; Merrill v. Equitable Surety Co., 131 Misc. 541, 227 N.Y.S. 266."

No purpose can be served by pursuing further this line of reasoning. The ambiguities go to the heart of the issue and are not uncertainties in the bond about details with little or no bearing on the case.

■ Surety by insisting consideration of its responsibility to plaintiffs be restricted strictly to the terms of its bond presents an instrument ambiguous as to its meaning, and thereby admits for consideration the facts and circumstances surrounding execution of the bond, whether it be held to be a fidelity or performance bond, to determine the intent of the parties and true meaning of the bond. The facts of a documentary nature are the March 24th contract and letter of Murphy to Surety's agent ordering the bond. The circumstances are supplied exclusively by Surety's witness Packwood, who wrote the bond. Again we declare these facts and circumstances admit of but one conclusion in our opinion. That was the conclusion upon which submission of the case was based.

See: Keyes Farm & Dairy Co. v. Prindle, 249 Mo. 600, 155 S.W. 391, 393; McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911, 916; Tomnitz v. Employers' Liability Assur. Corporation, 343 Mo. 321, 121 S.W. 2d 745, 752.

In the Keyes case the Court held:

"There is no real conflict of evidence upon any of the essential facts necessary to be considered in construing the contract involved, and in such circumstances, though the contract be conceded to be in itself ambiguous, its construction is nevertheless for the court, and not the jury."

And in the McFarland case:

"The court in interpreting the contract could consider the undisputed evidence throwing light upon its terms. Brannock v. Elmore, 114 Mo. [55] ·loc. cit. 64, 21 S. W. 451; 13 C.J. 786-7; Keyes Farm & Dairy Co. v. Prindle, 249 Mo. [600] 607,

155 S.W. 391; Meissner v. Standard Railway Equipment Co., 211 Mo. [112] loc. cit. 133, 109 S.W. 730; Haseltine v. Farmers' Mut. Fire Ins. Co., Mo.Sup., 263 S.W. [810], loc. cit. 813."

The Tomnitz case is conclusive:

"'It is the exclusive province of the court to construe a written instrument. If words of doubtful meaning are employed, or such as have more than one meaning, the question whether their technical sense is different from their ordinary meaning, may be left to a jury; but, in the end, the court must determine the interpretation of the contract with such light as the verdict may afford on the question submitted to the jury.' Edwards v. Smith, Adm'r, 63 Mo. 119 loc. cit. 127; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S.W.2d 705, loc. cit. 710. In the present case there was no evidence throwing any light on the question of construction except as to the inspection made by Rogers and the letters introduced, and this evidence was not disputed. 'Where the evidence' as to the interpretation of a contract 'is undisputed, there is nothing to submit to the jury.' McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911, loc. cit. 916, and cases there cited."

■ III. Surety insists the reference to the contract of March 24th in the bond was for a restricted purpose and the March 24th contract can be considered no further than for such restricted purpose. If we are correct in our conclusion, set forth above, that the bond is ambiguous, then reference to March 24th contract is called for as one of the facts surrounding execution of the bond, regardless of the extent of its reference in the bond.

Did Surety by its reference to the contract of March 24th, 1947, restrict such reference so as to avoid making the later contract a part of its bond? No words of restriction are used in its bond, as in cases cited in Surety's brief. Definite restrictive language was used in Johnson v. Grand Fraternity, 8 Cir., 255 F. 929. In City of St. Joseph v. Pfeiffer Stone Co., 224 Mo.App. 895, 26 S.W.2d 1018, the restrictive word was "direct". The case of Guerini Stone Co. v. P. J. Carlin

Constr. Co., 240 U.S. 264, 36 S.Ct. 300, 60 L.Ed. 636, was decided on the proposition that the contract was not identified "even in terms referring to that instrument". For authorities which we consider more fitting for the facts of this case, see Mutual Life Ins. Co. v. Schlein, 59 App.D.C. 41, 32 F.2d 937, where a bond and contract were construed together. The rule has been applied in case of bonds given in connection with building contracts. See Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S.W.2d 162, 76 A.L.R. 931, In Kansas City v. Robinson, 322 Mo. 1050, 17 S.W.2d 977, loc. cit. 982, it was held:

"It is evident from the facts developed that the bond was executed in pursuance of the ordinance and that they must be construed together." Also to a warehouse bond. State v. Cochrane, 264 Mo. 581, 175 S.W. 599. This is the law with reference to statutory bonds. See State v. Sheible, Mo.Sup., 163 S.W.2d 559, loc. cit. 560. The reason for the rule can be applied to this case:

"It merely puts the matter on a common sense footing as between man and man by reading the written law into the bond, discerning the objects to be subserved by the bond, and getting at the true intent and meaning of the bond by applying its terms to the objects sought. The general language of the bond must be interpreted in the light of these considerations."

The Surety is charged with constructive notice of the terms of the statute, in statutory bond cases. We are impressed like reasoning could apply where the Surety has actual knowledge of contract terms and holds itself out and in effect represents that it has written a bond to comply with and meet specific contract requirements. Had the Surety, when it returned the contract with the bond to Murphy, instead of remaining silent, informed Murphy that its bond did not comply with the contract, as Surety now asserts, Surety would not have made possible for its Principal, in good faith, to pass on to Feutz and Mundy and Courtney an instrument that, if Surety is to be sustained, lulled them into a false sense of security.

■ IV. We believe plaintiffs have a cause of action against Surety on the bond in suit based solely on the plain terms of the bond. The bond states Surety will pay Feutz such direct loss as he shall sustain of money belonging to him *"or for which the obligee* (Feutz) *is responsible"*, by acts of fraud, etc., of Harry F. Murphy in performance of the March 24th contract.

Plaintiffs executed an agreement, dated March 26th, 1947, and signed within a few days of its date (Plaintiffs' Exhibit "B") whereby it was stipulated that in consideration of Mundy and Courtney paying to Feutz $25,000.00 of the $40,000.00 paid to Murphy under the March 24th contract, Feutz agreed "to protect" Mundy and Courtney "from any loss arising" out of the advancement of the $25,000.00.

No valid reason appears for Surety denying liability under the plain terms of its bond, to account for the whole of the $40,000.00 loss sustained by Murphy's default, under the explicit terms of the bond which includes money "for which * * * (Feutz) is responsible". Feutz is responsible to Mundy and Courtney by virtue of the March 26th agreement between them.

■ We did not submit this theory of Surety's liability on its bond because plaintiffs' pleading is in one count and except for one paragraph referring to the March 26th contract, the pleading is construed as based on assignment of part interests in the March 24th contract by Feutz to Mundy and Courtney and liability of Surety on its bond resulting from such assignment. A claim of liability based on the March 26th contract between plaintiffs should have been pled in a separate count if submission was desired by plaintiffs. We think it comes under the rule that a claim founded on a separate transaction or occurrence "shall be stated in a separate count". See Rules 8(e) (2) and 10(b), Federal Rules of Civil Procedure.

■ V. Surety neither argued nor briefed its motion for new trial as to third-party defendant Maryland Casualty Company. We dismissed the case of the Surety against Maryland, based on co-suretyship, because there was no evidence Maryland

ever had knowledge of the March 24th contract which was covered by Surety's bond. The oral agreement leading to the written contract between Feutz and Murphy all took place subsequent to execution and delivery of Maryland's bond. Co-suretyship, like any other contract, must have a basis in intent and understanding of the parties. It does not exist here as between Surety and Maryland.

## Order

Motion to have the verdict and the judgment entered thereon set aside and to have judgment entered in accordance with motions for a directed verdict offered at the close of the plaintiffs' evidence and at the close of all the evidence and, in the alternative, for a new trial, and motion for a new trial on third-party complaint, should be and are each overruled.