THAYER-MOORE BROKERAGE COMPANY, Appellant, v. W. F. CAMPBELL et al., Defendants, R. A. CAMPBELL and R. S. CAMPBELL, Respondents.

**Kansas City Court of Appeals, April 29, 1912.**

1. **COUNTERCLAIM: Set-off.** A counterclaim must constitute a good cause of action in favor of defendant and against plaintiff, and must be a claim upon which a separate action would lie. If the facts do not constitute such a cause of action, they do not constitute a counterclaim, although they may be sufficient to constitute a set-off.

2. ————: ————: **Unliquidated Damages.** To constitute a set-off the demand must be in the nature of a debt, and as an unliquidated claim for damages is not included in the term "debt" it cannot be made the subject of set-off.

3. **CONTRACT: Breach: Damages.** A person, who commits a breach of a contract and thereby injures the other party, is not permitted to escape liability because the amount of the damages he caused is uncertain and not susceptible of accurate proof. The jury are invested, in such cases, with the function of fixing the amount from the facts and circumstances shown by proof.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*Scarritt, Scarritt, Jones & Miller* for appellant.

*T. B. Wallace* for respondents.

JOHNSON, J.—This is an action on two promissory notes of three hundred and fifty dollars each executed by defendants W. F. Campbell and C. S. Campbell as principals and R. A. Campbell and R. S. Campbell as sureties in payment to plaintiff of the rent for one year of a farm of 120 acres in Jackson county

which plaintiff, the owner, leased to W. F. Campbell and C. S. Campbell who operated a dairy on the farm. Both notes were executed February 21, 1907. One by its terms matured August 1, 1907, the other on November 1st of that year. Payments amounting to $215.25 were made by defendants and credited on the note first due leaving a remainder on that note of $134.75 with interest at eight per cent per annum from August 1, 1907. No payments were made on the other note which bore interest at eight per cent from the date of its maturity. The credits on the first note consisted of $150, cash paid by defendants and three items of thirty-nine dollars and twenty-five cents, six dollars and twenty dollars respectively for services rendered by defendants to plaintiff. By the provisions of the lease the farm was let to defendants R. A. and R. S. Campbell for a period of one year from March 1, 1907. The farm is seven or eight miles south of the business center of Kansas City and at the time of the letting it was the purpose of plaintiff to sell the place either in gross or in subdivisions. To permit the carrying out of this purpose and to provide for the dispossession of defendants of any part of the farm sold during the term and for a proper allowance to defendants on account of such dispossession the lease contained the following provisions:

"Said second party (these lessees) agrees to farm said land in a first-class maner, and to keep all shrubbery and fruit trees around the house and in the garden and orchard, properly trimmed, and in good condition, and all the fences and gates in good condition, and to keep the weeds and underbrush cut out on the pasture land. This lease being made upon the special condition that the whole place is to be kept in good condition, it being the intent of said first party to sell said farm during the summer of 1907, and to aid in that purpose, said first party makes this lease con-

ditioned upon the whole place being kept in an attractive manner.

This lease is made with the express understanding that said first party intends to sell said farm, and for that purpose, its representatives shall have free access to any part thereof at all proper times. To effect said sale, said first party may divide it up into small tracts and will have numerous customers looking over the place, and said second party agrees to assist in such sale by giving the prospective purchaser free access to such information as the prospective purchaser may desire of any part of said farm and buildings.

In case of the sale of any portion of said farm before the expiration of this lease and the purchaser shall want possession thereof, the said second party shall be allowed a rebate for the unexpired term of this lease, as the time and amount of land of which he is dispossessed shall bear to the whole, and if there are any growing crops upon such land, he shall be allowed a fair valuation of said crops at the time the land is taken. If the land of which he is dispossessed, should include the house and improvements surrounding it, he shall be allowed a drawback of ——— dollars per month for the use of the house for the unexpired term of the lease and said second party agrees to give possession to any part of said land that may be sold, upon being given thirty (30) days' written notice from said first party. In the event that said first and second parties cannot agree as to what damages shall be allowed for growing crops, they shall each appoint one man as arbitrator and the two so chosen shall appoint a third man, and these three shall fix the damages and the amount agreed upon by these arbitrators shall be paid to said second party, but the vacation and surrender shall take place at once, or within thirty (30) days, upon the request of first party, irrespective

of said time when the valuation aforesaid is determined.''

Pursuant to this lease defendant lessees took possession of the farm and conducted a dairy thereon during the whole term. They kept from thirty-five to forty milch cows and sold all the milk to a dealer. They do not claim in their testimony that the acts of plaintiff on which they found their defense and counterclaim damaged the cows, decreased their output or prevented the sale of the product to the dealer with whom they had a contract. A part of the farm was under cultivation and a part was in meadow and pasture land. Defendants, whose possession was not disturbed during the first five months of their term, had growing and thriving crops of millet, cane and hay. Shortly after the beginning of the term plaintiff had the land surveyed and platted into an addition. The plat subdivided the land into blocks and lots and streets and alleys and plaintiff made a number of sales of lots during the season, but delivered the actual possession to the purchaser of only one tract so sold. That tract contained four lots or about half an acre and was situated in defendants' millet field. There is no dispute over the fact that defendants lost the crop on that tract and became entitled to reimbursement for that loss.

On August 23, 1907, plaintiff wrote defendants the following letter: ''After considering the whole situation, we have concluded it would be best for all parties to cancel our arrangement and terminate the lease on the house and premises you now occupy, located in the southeast quarter ($\frac{1}{4}$) of the southwest quarter ($\frac{1}{4}$), section twenty (20), and the east one-half ($\frac{1}{2}$) of the northwest ($\frac{1}{4}$) quarter, section twenty-nine (29), township 48, range 33, Jackson county, Missouri, under the terms of the lease entered into between us on the 23d day of February, 1907.

''We would like for you to arrange to give us possession on the 30th day of September. We will adjust

with you the amount of rent due up to that time, and we write you this now so that you will have time to look around and get another place without too much inconvenience to yourself. · We are obliged to get the property in shape so that we can sell it, and this necessitates tearing down pretty much all of the fences and getting the whole premises in attractive shape, and we don't see that you could use it to advantage while we are working on it in this way. The note for rent the first of August is still unpaid and we would like to have the money for it.''

Defendants being unable to rent another farm at that time in the year declined to accede to this request and remained on the place. Plaintiffs were anxious to make their addition more attractive to customers and to that end sought and obtained the consent of plaintiffs to the grading of some of the platted streets through the fields of millet, cane and hay. The agreement which was not reduced to writing thus is stated by one of the defendants:

''Q. Did you complete any agreement at that time about the streets? A. No, sir. Q. When did you? A. Mr. Thayer came out sometime the next week and said he wanted to put through a street or two, and wanted to know where it wouldn't damage me too much. He said they wanted to open the place—they didn't want it to look so much like the country—wanted to make it look like town. Q. Was there anything said about payment of damages? A. Yes, they said whatever the damages was, they would settle it. He said they wanted me to grade some streets—I could work out there—if I would let them put the streets through—that later on they would have to do some grading.''

The agreement is stated differently by a witness introduced by plaintiff. We quote from his testimony:

''Q. Tell the jury what understanding was had at that time, what agreement was entered into with

Mr. Campbell in reference to the opening of those streets? A. Well, it has been quite a long time ago, but as near as I can recollect the facts they are about as follows: We wanted to get Mr. Campbell to leave the place, and he wouldn't leave—he wouldn't give it up. We were willing for him to give it up and he wouldn't do so and we then arranged with him about marking out some streets there and to reimburse him for any standing crops he might have. Q. What crops were mentioned? A. The only crop I saw there was a little Kaffir corn and some millet—some cane and millet. Q. Was any other crop mentioned or figured on between you? A. No, sir. Q. What else, if anything, was to be allowed him—just tell the whole thing—what the agreement was? A. We were to allow him for any damage that he had to his crop and any damage that might result, that is, any ground we might take from him for streets, it is my understanding we would allow him money for that, if it disturbed anything. Q. Was that the whole of the agreement? A. That was my understanding of it, as far as I remember it, nothing more.''

The evidence of defendants tends to show that pursuant to this agreement plaintiff had a number of streets graded and that damage thereby was wrought to the growing crops to the amount of about $300.

The fences on the place were destroyed at places required by the prosecution of the work. The damage to the crops was caused partly by the grading work and partly by inroads of live stock that found ready access to the fields through the numerous openings in the fences. Only one inclosure was left intact— the cow lot—and during the latter half of the term defendants were put to the annoyance and trouble of herding their stock and of looking for cows that strayed away. It is not claimed by defendants that this additional work caused them direct pecuniary loss. They did not find it necessary to hire extra help and their

only complaint is that they and their servants were burdened with additional labor on account of the open fences. Defendants filed an answer and counterclaim. In the answer the contract expressed in the lease and the subsequent oral contract were pleaded and the following items of damage were alleged as a defense to the notes: Three hundred dollars on account of damage to crops caused by the grading and removal of fences; $62 on account of the loss of a cow that strayed away; $225 "on account of land taken by the streets and to perform contracts of sales made by plaintiff" and $500 damages for "annoyance and inconvenience and extra work and labor in attempting to take care of the cows and other live stock on said premises after the plaintiff had removed the fences and begun to cut the streets through the said farm."

The counterclaim pleaded the same facts as the answer and treated these items of damages as proper subjects of counterclaim. At the request of defendants the court instructed the jury "that if you believe from the evidence that after the defendants went into possession of the said premises under the lease in question the plaintiff requested of these defendants permission to grade streets through the said premises and take down and remove fences therefor and promised and agreed to pay these defendants if they would permit such streets to be graded and fences to be taken down and removed any and all damages that might be sustained by the defendants by reason of the grading of the said premises and removal of said fences and that in pursuance of said agreement the defendants took possession of the parts of the said premises, graded streets through the same and removed the fences, then you are instructed that the defendants are entitled to recover on their counterclaim herein all damages shown by the evidence to have been sustained by the defendants on account of the grading of said streets through said premises and the removal of the

fences therefrom; and in estimating such damages you are entitled to take into consideration any destruction of growing crops shown to have been caused by the grading of such streets and taking down of said fences, not exceeding the sum of $300, the loss of any live stock shown to have been occasioned thereby, if any, not exceeding the sum of $62 and such general damages, inconvenience, expenses and trouble the defendants are shown to have sustained on account of the grading of the said streets and removal of fences and the occupation by the plaintiff of said premises for said purpose, not exceeding the sum of $500. And also such further sum as will compensate the defendants for being deprived of the use of the land so taken for such streets for the balance of the term of said lease.''

The verdict of the jury was as follows: ''We, the jury, find the issues for the plaintiff on its notes, principal and interest, to the sum of $627.43. We further find the issues for the defendants R. A. and R. S. Campbell on their counterclaim and assess their damages at $942.68. Deducting the lesser from the greater, we find for the defendants, R. A. and R. S. Campbell in the amount of $315.25.

''ERNEST G. GOULD, Foreman.''

At the hearing of the motions for a new trial and in arrest of judgment defendants entered a remittitur of sixty-two dollars the damages claimed for the lost cow and the court, after overruling the motions rendered judgment for defendants in the sum of $253.25. Plaintiff appealed.

The damages for the lost cow being eliminated by the remittitur the judgment before us includes an allowance to defendants on their counterclaim of these items of damages, viz., injury to crops alleged at $300; extra labor and trouble caused by the destruction of fences alleged at $500, and damages on account of land taken for streets and vacated on notice, alleged at

$225. The total amount of these alleged damages is $1025 and the total of the damages included in the judgment for these three items is $880.08.

Counsel for plaintiff argue that none of these items is a proper subject of counterclaim but that all are matters of defense to the notes and that inasmuch as the verdict was for the plaintiff for the full amount of the notes, in effect, it was a finding against defendants on all matters of defense and, therefore, that the verdict on the counterclaim being entirely unsupported should be treated as a nullity and judgment should go for plaintiff for the full amount of the verdict in its favor. Section 1807, Revised Statutes 1909, thus defines a counterclaim:

"The counterclaim . . . must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: First, a cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action; second, in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action. The defendant may set forth by answer as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both. They must each be separately stated, in such manner that they may be intelligently distinguished, and refer to the cause of action which they are intended to answer."

Section 1866, Revised Statutes 1909, provides: "If two or more persons are mutually indebted in any manner whatsoever, and one of them commence an action against the other, one debt may be set off against the other, although such debts are of a different nature."

In Estate Co. v. Arms Co., 110 Mo. App. 406, speaking of these statutes we said: "Under the statutes a set-off cannot be a counterclaim, nor vice versa. The courts of this state have recognized the distinction between set-off and counterclaim." And further we held that "to constitute a set-off the demand must be in the nature of a debt. [Waterman on Set-Off, sec. 133.] And the term "debt" as defined by most of the appellate courts of the country, does not include a claim for unliquidated damages."

The distinction between set-off and counterclaim thus is stated by the Supreme Court in Emery v. Railway Co., 77 Mo. 339:

"The growing principle of recoupment was recognized by the Legislatures of many of the states, including our own, and under the name of counterclaim it was so enlarged as to give the defendant the benefit of the difference between his cross demand and the plaintiff's claim, when the excess should prove to be in his favor. [Chandler v. Childs, 42 Mich. 128.] The counterclaim of our Practice Act includes everything which in modern times goes under the name of recoupment proper, as well as much more; for it extends to offsets and many cross actions not in any way connected with the plaintiff's demand. [Pomeroy, Remedies, sec. 736; Flesh v. Christopher, 11 Mo. App. 483; Gordon v. Bruner, 49 Mo. 570; Conner v. Winton, 7 Ind. 523; Pattison v. Richards, 22 Barb. 146.] But no right of recoupment as understood in modern times, or counterclaim, can exist in the absence of a cause of action in favor of the defendant. A cross action is always implied in its terms. [Pomeroy, Remedies, sec. 733; Carey v. Guillow, 105 Mass. 18; Clark v. Wildridge, 5 Ind. 176; Vassear v. Livingston, 13 N. Y. 257; White v. Reagan, 32 Ark. 281.] When it falls short of constituting a cause of action, it belongs to the class of partial defenses in reduction or mitigation of dam-

164 App.—2

ages, and ought to go by the name of reduction of damages. [Pomeroy, Remedies, sec. 733; Moffet v. Sackett, 18 N. Y. 522.]

It is undoubtedly true that when the plaintiff sues for the price of labor the defendant is at liberty to recoup against his claim, any damages suffered through the negligence of the plaintiff whereby the value of the consideration was depreciated. [Eaton v. Woolly, 28 Wis. 628; Pomeroy, Remedies, sec. 732.] In was in this class of cases, the modern use of the term recoupment was first recognized in England in a restricted sense. But in such cases it will be found that a valid cross action existed in favor of defendant, and in the use of it he was often confined to such damages as depreciated the value of the consideration."

And in 25 Am. and Eng. Ency. of Law, p. 572, we find an accurate definition of counterclaim: "A counterclaim must constitute a good cause of action in favor of the defendant and against the plaintiff, and belong to one of the several classes of actions mentioned in the statute. It must be a claim upon which a separate action would lie and upon which the defendant could recover a several judgment against the plaintiff. If the facts do not constitute a cause of action in favor of the defendant and against the plaintiff, they do not constitute a counterclaim, though they may be sufficient to constitute a defense by way of set-off or otherwise."

All of the demands pleaded in defendant's counterclaim were unliquidated and were not debts in the legal sense of that term. A debt is a legal liability to pay a specific sum of money and an uncertain and unliquidated claim for damages whether such claim be founded in tort or in contract is not a debt. [See 2 Words and Phrases, title "Debt."] The right of set-off is purely statutory and since the statute makes debt the sole subject of set-off and since defendants' claims, being for unliquidated damages were not debts, it fol-

lows the verdict for plaintiff on the notes was not an adjudication of defendants' demands though they were pleaded in the answer. Under the statutory definition of counterclaim as construed by the decisions to which we have referred these demands were a proper subject of counterclaim and we hold that plaintiff was not entitled to a different judgment from that authorized by the verdict on the principal action and the counterclaim.

Further plaintiff contends: ''There was no basis in law or fact for that part of the instructions which told the jury that, in estimating defendants' damages, they were entitled to take into consideration 'such general damages, inconvenience, expenses and trouble the defendants are shown to have sustained on account of the grading of the said streets and removal of fences and the occupation by the plaintiff of said premises for said purposes, not exceeding the sum of $500.' ''

On this subject counsel argue, first, that the acts of plaintiff in grading the streets and destroying the enclosures were authorized by the terms of the lease and as the leases did not include such damages among those for which defendants should receive compensation the contract contemplated that the loss occasioned by such acts should fall on defendants. We do not so interpret the lease. It gave plaintiff the right to survey the land, to plat it into an addition and to make sales of lots but it did not authorize the grading of streets, the destruction of fences, or any other spoliation of defendants' use of the farm than that caused by the vacation of such lots as might be sold during the season. The conduct of plaintiff shows that its officers so construed the contract. They tried to obtain a cancellation of the lease and a surrender of the farm on the plea that they intended practically to destroy it as a farm and failing in this effort made a new contract with defendants by which, in consideration of being allowed to grade streets, plaintiff agreed to

pay all damages defendants would suffer therefrom. The rule invoked by plaintiff "that a promise to pay a man for doing that which he is already under contract to do is without consideration" (Lingenfelder v. Brewing Co., 103 Mo. 578), is without application since the subsequent contract secured rights to plaintiff not granted in the lease and in consideration of the grant of such additional rights plaintiff agreed to compensate defendants by giving them a just equivalent, i. e., compensation for the loss the exercise of the rights would inflict on them. The subsequent contract was supported by a sufficient consideration and we pass to the second position taken by plaintiff which is that the evidence does not show that defendants suffered any loss on account of extra labor and trouble that could be measured in damages. The rule relied on by plaintiff thus is stated by BROADDUS, P. J., in Burdall v. Johnson, 122 Mo. App. 119: "The rule in such cases is properly expressed in Cravens v. Hunter, 87 Mo. App. 456, as follows: 'Where the amount of damages cannot be estimated with approximate correctness there being no sufficient data from which a witness could make an estimate, plaintiff is not entitled to recover more than nominal damages.' And, 'No substantial damages can be recovered by one for an injury to his property rights, without evidence furnishing a basis for a money estimate.' " [Sheedy v. Union Press Brick Works, 25 Mo. App. 527.]

That rule is sound. It is always incumbent upon the party who asserts he has been damaged to adduce proof of the elements of his damage but the rule against the recovery of uncertain damages relates to uncertainty as to the cause rather than uncertainty as to the measure or extent. A person who commits a breach of his contract and thereby injures the other party is not permitted to escape liability because the amount of the damages he caused is uncertain and is not susceptible of accurate proof. In such cases the

burden of the wronged party does not require him to
prove that which is incapable of proof but to prove all
the facts and circumstances bearing on the subject of
the extent of the damage and the jury are invested
with the function of making certain that which in its
very nature is uncertain by reducing to a pecuniary
value elements which, of themselves, carry no standard
by which such value may be measured with certainty.
[8 Am. and Eng. Ency. Law, 614, *et seq.*; Goldman
v. Wolff, 6 Mo. App. 492; Barngrover v. Maack, 46 Mo.
App. 407; Golden v. Construction Co., 100 Mo. App.
20; Spencer v. Railroad, 120 Mo. 159; Telephone Co.
v. Railroad, 202 Mo. 686; Ready v. Railway, 98 Mo.
App. 467; Dean v. Railroad, 199 Mo. 397.] In the
case last cited it is said: "The law only requires the
character of proof of which the particular issue in the
case, in the inherent nature of things is susceptible,"
and, further, "nor does it appear that the case was sus-
ceptible of proof of any more satisfactory character
than that introduced; hence there is a sufficient basis
upon which the good judgment and experience of the
jury could act in making a finding."

It is true defendants were not compelled to employ
extra help; did not suffer a diminution of the product
of the dairy and sold the product without loss but ow-
ing to the destruction of the inclosures on the farm
they and their servants were compelled to perform
extra labor and to endure the annoyance of looking
after thirty-five or more milch cows which each morn-
ing had to be turned loose to graze, watched during
the day and collected at night. Defendants are en-
titled to compensation for that labor and trouble. One
of the most fundamental rules of the law of damages
is that the injured party should receive compensation
for the actual loss sustained in consequence of the
injury.

We regard the facts and circumstances adduced
by defendant as constituting sufficient evidence to go

to the jury. It was the best proof of which a case of this character is susceptible and the fact that it carries no pecuniary standard of its own is due to an inherent defect common to the class of cases and not peculiar to the individual case. In what we have said we have answered the principal questions urged by plaintiff. Other points have been examined and are ruled against plaintiff. The cause was fairly tried and accordingly the judgment is affirmed. All concur.