**Woody EDMONDS and Robert Stiger, Plaintiffs-Respondents,**

v.

**James W. STRATTON and Margaret Janet Stratton, Defendants-Appellants.**

**No. 8993.**

Springfield Court of Appeals, Missouri.

July 23, 1970.

George Henry, Ruyle & Henry, Neosho, James L. Paul, Pineville, for plaintiffs-respondents.

R. J. Gordon, Yocom & Gordon, Pineville, for defendants-appellants.

TITUS, Presiding Judge.

Plaintiffs are partners engaged in the bulldozing business and defendants, husband and wife, are owners of the realty where plaintiffs undertook to ply their trade. Part of plaintiffs' services were performed on an hourly basis and part were rendered under a $1200 lump-sum oral contract. Defendants have appealed from the judgment entered in this court-tried case which awarded plaintiffs $1587 on their petition and defendants $563.10 on their counterclaim. After off-setting the awards, a net judgment was entered for plaintiffs in the sum of $1023.90. The lone point made by defendants on appeal is that the trial court "erred by applying an improper measure of damages, that is, by allowing [plaintiffs] to recover on the contract and also allowing [defendants] to recover on the oral contract; the correct measure of damages should have been the loss of the bargain and applied in favor of [defendants]." Three cases dealing with total failure of performance are cited to this point, namely, Norman v. Vandenberg, 157 Mo.App. 488, 138 S.W. 47; Simons v. Wittmann, 113 Mo.App. 357, 88 S.W. 791; Samuels v. Illinois Fire Insurance Company, Mo.App., 354 S.W.2d 352. The $1587 gross judgment for plaintiffs included $387 found to be due them for services performed on an hourly basis. Since defendants, as evidenced by their appeal assignment, do not complain of that portion of the judgment, we will disregard the dispute involving hourly work and proceed as if the contract work was the only matter in-

volved and the gross award to plaintiffs had been $1200.

■ Oral arguments by both parties are encouraged by appellate courts because they often assist the court to a fuller understanding of the theories of the parties and the issues on appeal. Quinn v. St. Louis Public Service Company, Mo., 318 S.W.2d 316, 319(2); Johnson v. Fogertey Bldg. Co., Mo.App., 194 S.W.2d 924, 931 (8). In this cause the parties elected to submit the appeal on their written briefs without oral argument, thereby foregoing the opportunity to clarify many matters, as we will see anon, which their pleadings, evidence and briefs have managed to pollute with doubt and uncertainty. Our burden is further augmented by the fact that no request was made of the trial court for a statement of the grounds of its decision and that none was made which specifically accounts for the judgment rendered. Civil Rule 73.01(b), V.A.M.R.; § 510.310, V.A.M.S. Nevertheless, in such a situation the judgment is to be affirmed if it can be sustained upon any reasonable theory. Hiatt v. Hiatt, Mo., 168 S.W.2d 1087, 1089(4); Morris v. Western Casualty and Surety Company, Mo.App., 421 S.W.2d 19, 21(1).

■ This case started as a suit on "a stated account." Defendants' answer denied the account and convoyed a counterclaim which alleged that pursuant to the oral contract plaintiffs had agreed to bulldoze 15 acres of defendants' land in accordance with certain specifications for $1200. The counterclaim also averred that while plaintiffs had partly accomplished the "bulldozing agreed," the work did not conform to the contract and "was done in an unskillful and unworkmanlike manner," all to defendants' damages in the sum of $1973.10. Plaintiffs' reply admitted the contract but generally denied the balance of defendants' pleading. Thereafter, plaintiffs filed an amended petition wherein they adopted the oral contract "as outlined in defendants counterclaim." Because of the construction of the amended petition and its commingling of averments anent the contract work and that performed on an hourly basis "at the agreed price of $14.00 per hour," which was also said to be "the reasonable value of the work performed" by the plaintiffs, we are uncertain whether plaintiffs were declaring on the agreement to recover the contract price, in quantum meruit to recover the reasonable value of their services, or alternately (Civil Rules 55.06 and 55.12, V.A.M.R.; §§ 509.050 and 509.110, V.A.M.S.) on both the contract and in quantum meruit. It is to be noted, however, that although a plaintiff may not ordinarily declare upon an express contract and recover on some other agreement [Robson v. United Pacific Insurance Company, Mo., 391 S.W.2d 855, 860(1)], a plaintiff may join a count on an express contract with one based on quantum meruit without being compelled to elect between them [Lee-Schermen Realty Co. v. Rueffel, Mo.App., 176 S.W.2d 655, 657(8)] and "[i]f 'it is impossible to say with definiteness whether the plaintiff is counting upon an express contract or upon quantum meruit, he will be permitted to recover upon whichever of the two theories his evidence may warrant.' In re Hukreda's Estate (Mo.Sup.) 172 S.W.2d 824, 826." Johnson v. Estate of Girvin, Mo. (banc), 414 S.W.2d 245, 248(1). To add to the confusion, the petition contained the assertion that "plaintiffs did all the work covered in said oral contract" and also the contradictory allegation that plaintiffs "were ordered to quit work by defendants" ere plaintiffs' undertakings were completed. Plaintiffs prayed for $1200 on the contract work.

■ Defendants' answer denied the material allegations of the amended petition, affirmatively pleaded and prayed for damages in the amount of $1973.10, reaffirmed the counterclaim, denied that plaintiffs had been discharged, and alleged "that plaintiffs walked off the job and removed their equipment" before their task was finished. On the day of the trial defendants amended their answer and coun-

terclaim "by reducing amount claimed to $563.10." Albeit was not done intentionally, it would seem that by generally denying plaintiffs' petition and by pleading their damages affirmatively both by answer and counterclaim, defendants simultaneously pursued divergent courses. Under the general denial, defendants were entitled to establish, if they could, that the value of plaintiffs' services was less than plaintiffs claimed. Service Construction Company v. Nichols, Mo.App., 378 S.W.2d 283, 289 (10). The same evidence would likewise go to establish defendants' counterclaim and what may be generally described as their affirmative defense of recoupment or set-off as averred in their answer. See Standard Insulation and Window Co. v. Dorrell, Mo.App., 309 S.W.2d 701, 704(3–6). The former remedy of set-off (a term loosely and confusingly used) and a defendant's common law right to recoupment have lost considerable identity in modern practice and are included within the remedy of a counterclaim. Freeman Contracting Company v. Lefferdink, Mo.App., 419 S.W.2d 266, 275; Thayer-Moore Brokerage Co. v. Campbell, 164 Mo.App. 8, 17, 147 S.W. 545, 549; Historical Note under § 509.420, V.A.M.S. These three remedies have a quality of similarity, yet possess sharp differences. The old statutory set-off had to be founded on a liquidated debt, which distinguished it from a counterclaim [Brandtjen & Kluge v. Hunter, 235 Mo. App. 909, 919–920(5–7), 145 S.W.2d 1009, 1014(5–7)] and, very generally speaking, the garden variety of set-off is defined as a remedy employed by a defendant to discharge or reduce the plaintiff's demand by an opposite one arising from a transaction which is *extrinsic* to the plaintiff's cause of action. 47 Am.Jur., Setoff and Counterclaim, § 3, p. 709; 80 C.J.S. Set-Off and Counterclaim § 3, pp. 7–9. The judgment on a set-off (provided the set-off is established as being greater than plaintiff's demand) may exceed plaintiff's claim and in such a case, just as it would be if it were a counterclaim, the defendant would have judgment for the difference and plaintiff's

cause would fail. By the defense of recoupment, defendant seeks to cut down plaintiff's claim upon proof of defective performance. Recoupment goes to mitigation or extinguishment of plaintiff's damages but permits of no affirmative judgment for the defendant [Tile-Craft Products Co. v. Colonial Properties, Inc., Mo., 449 S.W.2d 653, 655–656(1); State v. Weatherby, 344 Mo. 848, 859, 129 S.W.2d 887, 893(11)] as is permitted if defendant elects to set up his own damages by way of a counterclaim. Talbot-Quevereaux Const. Co. v. Tandy, Mo.App., 260 S.W.2d 314, 316. We can eliminate defendants' claim (either by answer or counterclaim) as constituting a technical set-off or a statutory type of set-off because it was neither extrinsic to plaintiffs' cause of action nor predicated upon a liquidated debt. If the claim was an attempt at recoupment, the possibility of a double recovery on this theory under the answer and the counterclaim was thwarted by the court in awarding plaintiffs all they had asked in their petition. When the defendants reduced their counterclaim demand from $1973.10 to $563.10 they foreclosed the possibility of receiving a judgment in excess of plaintiffs' claim, unless it was established that plaintiffs had wholly failed to perform the contract or that plaintiffs' services had no value whatsoever. While it seems reasonably clear that the trial court viewed defendants' counterclaim to be in the nature of recoupment, we are assured, in light of defendants' present complaint, that they did not intend their answer or counterclaim to be taken as a mere counterdemand to reduce plaintiffs' claim by $563.10 [Schroeder v. Prince Charles, Inc., Mo., 427 S.W.2d 414, 419(4)], but rather as vehicles whereby they could obtain a net judgment of $563.10 against the plaintiffs.

Plaintiffs' testimony was to the effect that they had fully discharged their contract obligations and had expended 87 or 88 hours of labor in so doing. It was demonstrated that plaintiffs' claim for $1200 came "close to $14.00 an hour" for the

time spent on the project and one witness opined that considering the type of equipment plaintiffs had used, they had done "a pretty good job." Plaintiffs related that defendants had voiced no complaints concerning their efforts until "we finished the job" and then defendants "became completely unsatisfied with the work" and refused to pay for anything. To the contrary, the defendant-husband said "[i]t was * * * the most incomplete, horrible job I had ever seen" and that plaintiffs "never once stated that they had completed the job." According to defendants and their witnesses, defendants were required to and did employ one Chris Johnson to do "the work as it should have been done originally" by the plaintiffs. Defendants paid Johnson $1763.10 for his services. It was Johnson's expert opinion that "the reasonable bid for this [entire] job * * * would have been $3,000." Early in defendants' endeavors to prove their case, and upon what now appears to be the ill-advised insistence of counsel, the defendant-husband was urged to and did agree that "[y]ou are asking the Court for the difference between [the $1763.10] you paid Mr. Johnson and what your [$1200] contract was [with the plaintiffs], which [is] $563.10." Isolating this statement in the shadow cast by defendants' single appeal point and the citations penned in their brief, we envision that defendants were then undertaking to establish that plaintiffs had wholly failed to perform the contract or that plaintiffs' work was so defective as to be worthless and tantamount to a total failure of performance. This, of course, tacks in a direction different from the pleadings and other proof dealing with the degree and quality of plaintiffs' actions. By their answer and counterclaim defendants acknowledged "that the plaintiffs did a portion of the bulldozing on said fifteen acre tract," and, to say the least, the evidence produced by both sides attests to this fact. In addition, defendants argue in their brief that the $1763.10 paid to Chris Johnson "was the reasonable sum necessary to *complete the job*," (our emphasis), and conclude that

the "trial court felt that the work done by the [plaintiffs] was of some benefit to [defendants]."

■ When one party to a construction contract or to a contract for the furnishing of labor and services is compelled to relet the work to another because of the *total* failure of performance by the other contracting party, his measure of damages is generally the difference between the contract price and the reasonable price he is compelled to pay on the reletting. Noonan v. Independence Indemnity Co., 328 Mo. 706, 720, 41 S.W.2d 162, 167–168(12), 76 A.L.R. 931, 940; Simons v. Wittmann, supra, 88 S.W. at 794(1); 25 C.J.S. Damages § 79a., pp. 875–876. However, where there has been part performance which falls short of the terms of the contract, the owner's measure of damages is ordinarily the reasonable cost of completion (Pioneer Const. Co. v. Schmidt, Mo., 192 S.W.2d 859, 860(2); Burger v. Wood, Mo.App., 446 S.W.2d 436, 442(8); 25 C.J.S. Damages § 75, pp. 855–858; 5 Corbin on Contracts § 1089, at p. 488), and if the breach results from a combination of defective construction and a failure to complete the work, the owner's damages are to be measured by the reasonable cost of reconstruction and completion in accordance with the agreement. Brusca v. Gallup, Mo.App., 429 S.W.2d 780, 783(6); Samuels v. Illinois Fire Insurance Company, supra, 354 S.W.2d at 357–358(3).

■ In our attempt to analyze defendants' position on appeal, we conclude they have fallen into error by failing to distinguish between the fact of performance and the quality and quantity of performance. Brush v. Miller, Mo.App., 208 S.W.2d 816, 820. Had the pleadings and evidence established total failure of performance of the contract or that plaintiffs' services were absolutely worthless, then defendants' damages could properly be measured by the difference between the bargain afforded by plaintiffs' promise and what it reasonably cost defendants to have

the agreement executed by another. This measure of damages relates to the fact of performance and cannot be properly applied here in view of defendants' pleadings and proof that went to show at least partial performance of some value by plaintiffs. Speculation by us concerning the possibilities if defendants had refrained from reducing the amount of their claim, would only serve to make this opinion more prolix and would be naught but obiter dictum. The fact is that defendants did reduce their demand to $563.10 and were only entitled to recover for their damages supported by the evidence [Zweifel v. Lee-Schermen Realty Co., Mo.App., 173 S.W.2d 690, 701(9)] in a sum established by the proof, provided it did not exceed the amount of their prayer. Fletcher v. North British and Mercantile Ins. Co., Mo. (banc), 425 S.W.2d 159, 164(5); Roberts v. Quisenberry, 362 Mo. 404, 409, 242 S.W.2d 26, 29(5). Bearing in mind that the trial court, sitting as the trier of the facts, has leave to disbelieve all the testimony of any witness [Southwestern Bell Tel. Co. v. Crown Insurance Co., Mo.App., 416 S.W.2d 705, 711(6)] or to believe part of a witness' testimony and reject the rest [North Side Finance Co. v. Sparr, Mo. App., 78 S.W.2d 892, 894(4)], under the evidence adduced we cannot hold as unreasonable a theory of recovery bottomed upon quantum meruit for the plaintiffs and recoupment recovery via counterclaim for the defendants. Neither can we say the court's apparent finding that the reasonable value of plaintiffs' services in the sum of $1200 should be tempered by the $563.-10 claimed by the defendants was clearly erroneous. Civil Rule 73.01(d), V.A.M.R.; Nelle Plumbing Company v. Stefanic, Mo. App., 453 S.W.2d 636, 639–640(1).

Defendants' assignment on appeal, though it lacks much to be desired under Civil Rules 83.05(a) (3) and (e), V.A.M. R., may have been proper had the proof and pleadings established total failure of performance by plaintiffs. Such, however, was not the case. Defendants, in the circumstances shown, received all the relief they sought and defendants' failure to ask for more, if they deserved it, was not the fault of the trial court.

The judgment is affirmed.

STONE, and HOGAN, JJ., concur.