**UNERSTALL FOUNDATIONS, INC.,
Holdings, Inc., Respondent,**

v.

**Caroline M. CORLEY, Mortgage Electronic Registration Systems, Inc., South and Associates, P.C., Trustee, Edward Jones Mortgage, LLC and Joyce Novotny, Appellants,**

**and**

**Bruce J. Zebel, Defendant.**

**No. ED 93624.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 12, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 23, 2010.

Application for Transfer Denied Jan. 25, 2011.

---

Richard F. Huck III, Clayton, MO, for appellants.

Kurt A. Voss, Washington, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Caroline M. Corley (Corley) appeals from the judgment of the Circuit Court of St. Louis County in favor of Unerstall Foundations, Inc. (Unerstall) on its claims for quantum meruit and enforcement of a mechanic's lien. On appeal, Corley claims that: (1) the trial court erred in not reducing Unerstall's recovery by virtue of either a set-off or recoupment and the trial court's judgment in favor of Unerstall is inconsistent with its judgment in favor of Corley and against Zebell; (2) Unerstall failed to prove that Corley was unjustly enriched as required for a claim of quantum meruit; (3) the trial court applied the wrong interest rate and calculated interest based on an incorrect commencement date; and (4) Unerstall's mechanic's lien statement was deficient because it did not contain a "just and true account" of Unerstall's demand. We affirm in part and reverse and remand in part.

### Background

On April 2, 2007, Corley contracted with Bruce Zebell d/b/a Bruce J. Zebell L.L.C. Construction Management Services (Zebell) to construct a new house for Corley with Zebell serving as the general contractor on the project and Corley agreeing to pay $216,134. Zebell hired Unerstall as a subcontractor to perform concrete work on the house's footings, foundation, and basement floor pursuant to plans prepared by Contempri Homes and approved by the City of Richmond Heights (the City). The agreement between Zebell and Unerstall provided that interest on any unpaid balance would accrue at two percent per month. Unerstall did not have an agreement with Corley.

In July 2007, other subcontractors hired by Zebell surveyed and excavated footings for the house. After the footings were dug, Unerstall poured the footings and foundation. Unerstall did not participate in digging the footings or setting the final grade for the footings. Unerstall later poured a concrete floor for the basement and a driveway, sidewalks, and two patio slabs. Unerstall last worked on the property on October 22, 2007.

After Unerstall completed its work, Corley discovered multiple problems with Zebell's work including that a portion of the footings did not comply with the applicable building code. The building code requires that the depth of all footings be a minimum of thirty inches below the final grade. On November 27, 2007, Corley terminated her contract with Zebell.

Unerstall submitted invoices totaling $31,478.90 to Zebell for the concrete work, with the last invoice submitted on October 18, 2007. Unerstall also submitted a demand letter through his counsel to Corley requesting payment on December 21, 2007. Neither Zebell nor Corley paid Unerstall for the concrete work. On March 27, 2008, Unerstall filed a mechanic's lien statement against the property for the sum of the

invoices plus interest. Unerstall attached supporting documentation to the lien statement including the invoices, time sheets, and materials receipts.

On July 11, 2008, Unerstall filed suit against Corley and Zebell seeking, *inter alia,* enforcement of the mechanic's lien and recovery for quantum meruit. Corley denied Unerstall's allegations and filed a cross-claim against Zebell alleging breach of contract. The trial court held a bench trial on February 27, 2009, and March 23, 2009.

At trial, Albert Unerstall, Unerstall's president, testified that Unerstall was not responsible for either the grading or digging of the footings, another subcontractor excavated the footings before Unerstall arrived on the job site, and Unerstall was only responsible for pouring the footings, foundation, and the external flatwork. Mr. Unerstall further testified that he followed Zebell's directions because Zebell was the general contractor on the project. Mr. Unerstall conceded that he did not have any agreement with Corley regarding the interest rate to be charged on unpaid balances and that the depth of a portion of the footings did not comply with the building code.

Zebell confirmed Mr. Unerstall's testimony that Unerstall was not responsible for the grading or digging of the footings and that as general contractor, Zebell directed Unerstall's work. Zebell also testified that Unerstall poured the footings consistent with the approved plans and his directions and he had no issue with the work Unerstall performed. Zebell admitted that some of the footings did not meet building code requirements.

The City building commissioner and senior building inspector opined that if the depth of any of the footings was less than thirty inches below grade, then such footings did not comply with the building code.

However, the building commissioner testified that the City approved the footings and did not find any issues with Unerstall's work. Corley's architect also testified that a portion of the footings did not comply with the building code because they were not sufficiently deep. He proposed a method to make the deficient footings code compliant, but the repair would cost approximately $36,500.

Corley testified that she paid Zebell and the other subcontractors, excluding Unerstall, a total of $178,214.75 before terminating Zebell. Corley hired other contractors to repair Zebell's mistakes and complete the construction on the house. Corley paid the new contractors a total of $68,987.46. Corley admitted that Unerstall performed work on the house for which she had not paid anyone and that she did not have any evidence that Unerstall's work did not conform to the approved plans or Zebell's directions.

The trial court entered a judgment in favor of Unerstall against Corley and Zebell, jointly and severally, on its claims for enforcement of a mechanic's lien and quantum meruit. The trial court specifically found that Unerstall performed its work on the project in a workmanlike manner and awarded Unerstall $31,478.90 in damages and interest at a rate of two percent beginning on November 6, 2007. The trial court also found in favor of Corley on her cross-claim against Zebell and awarded her $36,500 for the cost of repairing the footings and $30,487.46 for the excess costs Corley incurred in completing the house. Corley filed a motion for new trial, which the trial court denied. This appeal followed.

### Standard of Review

We will affirm the judgment of the trial court in a court-tried case unless

there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Mo. Land Dev. Specialties, LLC v. Concord Excavating Co., L.L.C.,* 269 S.W.3d 489, 496 (Mo.App. E.D. 2008) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment. *Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.,* 279 S.W.3d 179, 184 (Mo. banc 2009). We disregard all evidence and inferences contrary to the judgment. *Id.* This court will generally defer to the trial court's findings of fact but will review conclusions of law without any deference. *Mo. Land Dev. Specialties,* 269 S.W.3d at 496.

### Discussion

**1. Set-off, Recoupment, and Inconsistent Judgments**

■ In her first point on appeal, Corley contends the trial court erred in failing to reduce Unerstall's award for the cost of repairing the footings because "Corley was entitled, under the doctrine of recoupment, to a set-off." Corley argues either recoupment or set-off is warranted because the evidence supports a finding that Unerstall performed its work in an unworkmanlike manner by failing to comply with the applicable building code. Unerstall asserts that the trial court did not err because Corley's claim of defective performance did not apply to work for which Unerstall was responsible. Corley also claims in her first point that the trial court's judgment in favor of Unerstall was fatally inconsistent with the judgment in favor of Corley on her cross-claim against Zebell.

■ Though Corley refers interchangeably to recoupment and set-off in her brief, they are distinct theories. *See* *Tindall v. Holder,* 892 S.W.2d 314, 326 (Mo.App. S.D.1994). Set-off is a remedy employed by a defendant "to discharge or reduce plaintiff's claim by an opposite claim arising from a transaction extrinsic to the plaintiff's cause of action." *Sveum v. J. Mess Plumbing, Inc.,* 965 S.W.2d 924, 926–27 (Mo.App. E.D.1998) (internal citation omitted). Set-off permits a trial court to enter an affirmative judgment in favor of a defendant if defendant's claim exceeds the plaintiff's claims. *Edmonds v. Stratton,* 457 S.W.2d 228, 232 (Mo.App.1970).

■ Conversely, recoupment is a defense that reduces or eliminates a plaintiff's recovery through proof of plaintiff's defective performance but does not permit an affirmative judgment in favor of a defendant. *RPM Plumbing Mech., Inc. v. Jim Plunkett, Inc.,* 46 S.W.3d 60, 62 (Mo. App. W.D.2001); *Edmonds,* 457 S.W.2d at 232. Unlike set-off, recoupment allows for a reduction in a plaintiff's claim only if a defendant's claim of defective performance arises from the same transaction supporting the plaintiff's claim. *Edmonds,* 457 S.W.2d at 232; *see also* 80 C.J.S. *Set-off and Counterclaim* § 37 (2010). To establish a right to recoupment, a defendant must prove that the plaintiff performed defective work. *See Edmonds,* 457 S.W.2d at 232–34.

We first find that the trial court did not err in refusing to apply a set-off to the judgment in favor of Unerstall. Corley's claims of Unerstall's defective performance did not involve "a transaction which is extrinsic to the plaintiff's cause of action." Thus, there was no basis for the trial court to reduce Unerstall's award through set-off. *Edmonds,* 457 S.W.2d at 232.

■ We next consider whether Corley established a basis for recoupment. To do so, Corley must show that the trial court erred in not finding Unerstall's perform-

ance defective. *See Edmonds*, 457 S.W.2d at 232. However, we find there is sufficient evidence to support the trial court's finding that Unerstall performed its work in a workmanlike manner and implicit finding that Unerstall was not responsible for the deficiencies in the footings. Zebell and Mr. Unerstall both testified that Zebell hired other subcontractors to set the elevations for the footings, excavate the footings, and finish grading on the project. Mr. Unerstall also testified that Unerstall followed Zebell's directions and merely poured the footings after they had been dug. Zebell further testified that there were no issues with the work that Unerstall performed on the footings. Because the trial court's finding that Unerstall performed its work in a workmanlike manner is supported by sufficient evidence, Corley fails to establish a basis for recoupment.

Corley also contends that the trial court's judgment in favor of Corley and against Zebell for $36,500 is fatally inconsistent with the finding that Unerstall performed its work in a workmanlike manner. The trial court based its judgment in favor of Corley on "the cost of repouring the footings due to the insufficient grading." The evidence at trial supported a finding that Unerstall was not responsible for the depth of the footings. Thus, it was not inconsistent for the trial court to find that Unerstall performed its work in a workmanlike manner while also entering judgment against Zebell for the cost to repair the footings. Point denied.

### 2. *Quantum Meruit*

In her second point on appeal, Corley contends the trial court erred in entering judgment in favor of Unerstall on its claim for quantum meruit. Specifically, Corley argues that because in order to complete the house, she paid more than the contract price to Zebell and other contractors, Unerstall failed to demonstrate that Corley was unjustly enriched. Unerstall responds that it proved Corley was unjustly enriched by presenting evidence that Corley did not pay anyone for the work Unerstall performed.

The principal function of the cause of action for quantum meruit is to prevent a defendant's unjust enrichment through the retention of a benefit without paying its reasonable value. *County Asphalt Paving Co., Inc. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo.App. E.D. 2007); *International Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo.App. E.D.1990). Payment or non-payment determines whether a defendant was unjustly enriched. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 265 (Mo.App. W.D.1984). Thus, to recover on a claim for quantum meruit, a plaintiff must generally establish that "the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, that the materials or services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services." *Lee Deering Elec. Co. v. Pernikoff Constr. Co.*, 247 S.W.3d 577, 582 (Mo.App. E.D.2008) (internal citation omitted).

However, a subcontractor alleging quantum meruit against a property owner must also plead and prove that the owner failed to pay not only the subcontractor but also the general contractor for the work performed by the subcontractor. *International Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo.App. E.D.1990). Without such a requirement, "the defendant owners could be required to pay twice for the same benefit." *Green Quarries*, 676 S.W.2d at 266.

Here, there is no evidence that Corley paid for the work Unerstall performed.

Corley expressly conceded during trial that she had not paid anyone for the concrete work performed by Unerstall. "Payment or non-payment by the owner is a factor which determines ... unjust enrichment." *Green Quarries*, 676 S.W.2d at 265. Without proof that she paid either Zebell or Unerstall, Corley fails to establish that Unerstall did not prove the necessary elements for quantum meruit.

In *Archway Kitchen & Bath, Inc. v. Lands Dev. Corp.*, this court addressed whether a property owner's admission that he or she did not pay for work performed provided sufficient evidence to support a trial court's judgment in favor of a subcontractor on a claim for quantum meruit. 838 S.W.2d 13, 15 (Mo.App. E.D.1992). There, the property owners claimed they paid the full contract price to the general contractor and therefore the subcontractor failed to prove non-payment by the property owners. *Id.* at 14. However, the subcontractor introduced evidence that the property owners explicitly admitted that they had not paid anyone for the materials furnished by the subcontractor. *Id.* We found that "this evidence ... establishes that they did not pay anyone for the services rendered by [the subcontractor,]" and held that there was substantial evidence to support the trial court's judgment in favor of the subcontractor on its claim for quantum meruit. *Id.* As in *Archway Kitchen & Bath*, Corley's admission that she had not paid anyone for Unerstall's work provided substantial evidence to support the trial court's judgment.

Given Corley's admission, her reliance on *International Paper Co.*, 788 S.W.2d 303 and *Northeast Painting Co. v. AOC Int'l (U.S.A.), Ltd.*, 831 S.W.2d 711, 712 (Mo.App. W.D.1992) is misplaced. In *International Paper*, this court reversed the trial court's judgment entered upon a jury verdict in favor of a subcontractor against property owners on a claim for quantum meruit. *Id.* at 306. We held that the property owners were not unjustly enriched because they had "paid the amount they were required to pay under the construction contract in the manner specified in that contract...." *Id.* In so holding, this court noted, "[e]ven though the subcontractor remains unpaid and thus suffers detriment, equity will not require the owner to pay twice." *Id.* (citing *Green Quarries*, 676 S.W.2d at 264). *Northeast Painting Co.* similarly held that a subcontractor could not recover on a quantum meruit claim because the property owners paid more than the contract price to the general contractor and its subcontractors. 831 S.W.2d at 712. In those cases, a judgment in favor of the subcontractor required the property owner to pay twice for the same work. Here, there is no evidence that Corley paid twice for Unerstall's work. To the contrary, the evidence establishes that Corley did not pay either Zebell or Unerstall for the work Unerstall performed. Point denied.

### 3. Interest Award

█ In her third and fourth points on appeal, Corley claims the trial court used an incorrect interest rate and commencement date when it calculated prejudgment and postjudgment interest against her. More specifically, Corley argues the trial court improperly relied on an interest rate specified in the contract between Unerstall and Zebell rather than the statutory interest rate because she never agreed to the contractual interest rate. Unerstall responds that the contract to which Unerstall and Zebell agreed is sufficient to support the trial court's award of interest at the two percent rate provided for in the contract between Unerstall and Zebell. Corley also asserts that the trial court improperly used November 6, 2007 as the starting point for interest because this

date predates Unerstall's demand for payment.

A trial court must award prejudgment interest for a successful claim for the enforcement of a mechanic's lien and may award prejudgment interest to a plaintiff prevailing on a liquidated quantum meruit claim.[1] *Am. Prop. Maint. v. Monia*, 59 S.W.3d 640, 646 (Mo.App. E.D.2001). Section 408.020 [2] provides, in relevant part, that prejudgment interest shall be calculated at "the rate of nine percent per annum, when no other rate is agreed upon...." Section 408.040.1 also mandates that, absent a contractual provision for a higher rate of interest, judgments "shall bear [interest at] nine percent per annum until satisfaction...."

We find that the trial court erred as to Corley, in applying an interest rate exceeding the statutory interest rate in the absence of an agreement between Unerstall and Corley. The trial court found that Unerstall and Zebell entered into an agreement providing that "past due accounts are charged a 2% monthly service charge." However, the record before us contains no evidence that Corley either agreed to the interest rate provision of the contract between Unerstall and Zebell or entered into any contract with Unerstall providing for a two percent per month interest rate. In fact, Mr. Unerstall admitted that Corley never agreed to the two percent per month interest provision. "Where, as here, the parties have no agreement as to the rate of interest, the rate in Section 408.020 applies to the award of prejudgment interest on such claims." *Am. Prop. Maint.*, 59 S.W.3d at 646. Similarly, in the absence of an agree-

ment, the statutory rate of Section 408.040.1 applies to the trial court's award of postjudgment interest.

Corley next argues that the trial court erred in calculating prejudgment interest from November 6, 2007 because the undisputed evidence demonstrates that Unerstall did not demand payment from Corley until December 21, 2007. Under Section 408.020, a creditor may recover prejudgment interest only after the creditor has demanded payment. *Baris v. Layton*, 43 S.W.3d 390, 397 (Mo. App. E.D.2001). The date from which the trial court should calculate prejudgment interest is a factual question for the trial court. *Am. Prop. Maint.*, 59 S.W.3d at 646.

Our review of the record reveals that there was no evidence that Unerstall demanded payment from Corley on or before the date used by the trial court. Instead, the evidence, including Mr. Unerstall's testimony, demonstrated that Unerstall did not submit to Corley any invoices or communications regarding payment until Unerstall's attorney sent a demand letter on December 21, 2007. Therefore, the trial court erred in calculating its award of interest against Corley beginning on November 6, 2007. Instead, the trial court should have calculated interest from December 21, 2007. *Baris*, 43 S.W.3d at 397–98. We grant points three and four.

### 4. Mechanic's Lien

In her final point on appeal, Corley claims the trial court erred in entering its judgment for a mechanic's lien in favor of Unerstall because Unerstall's mechanic's lien statement failed to state a "just and true account." [3] More specifically,

---

1. Corley does not argue that Unerstall's quantum meruit claim was unliquidated.

2. All statutory references are to RSMo.2000, unless otherwise indicated.

3. Unerstall claims that Corley failed to prop-

Corley argues Unerstall's lien statement is deficient because it does not "itemize or disclose the labor rate(s) of its various employees." Unerstall responds that its mechanic's lien statement is sufficient to constitute a "just and true account."

■■■■ A claimant seeking a mechanic's lien must "file with the clerk of the circuit court of the proper county a just and true account of the demand due him . . ." Section 429.080 RSMo. (Supp.2007). The filing of a "just and true account" is "a condition precedent to the right to maintain an action and enforce a lien on property." *Mo. Land Dev. Specialties*, 269 S.W.3d at 497. The purpose of the "just and true account" is so "the landowner and others interested may discern from the lien statement information sufficient to permit an investigation to determine whether the materials the claimant asserts he has furnished were actually used in the construction of the building, whether they were lienable items, and whether the amount charged is proper." *Id.* (internal citation omitted).

■■■■ However, neither Section 429.080 nor the relevant case law defines what constitutes a "just and true account." *Structure & Design, Unlimited, Inc. v. Contemporary Concepts Bldg. & Design, Inc.*, 151 S.W.3d 904, 907 (Mo.App. W.D. 2004). "Rather, whether a lien statement is a 'just and true account' depends on the particular facts of each case." *Mo. Land Dev. Specialties*, 269 S.W.3d at 497.

Here, the trial court found that Unerstall's lien statement "contained a just and true account of the amount due [Unerstall] for work, labor and concrete materials furnished by it." We find that there was substantial evidence to support the trial

court's finding. For its lien statement, Unerstall submitted documentation, including its original proposal, invoices, and job summaries prepared at the site by the company foreman, showing the type of work performed, the amount of work performed, and any additional labor performed at Zebell's request. Unerstall also provided receipts for the materials used on Corley's house.

Corley claims the lien statement is deficient for failing to provide the rates charged and work performed by Unerstall's employees. However, Unerstall provided sufficient information from which Corley could investigate Unerstall's demand for payment. Unerstall did not disclose the labor rate for each employee but filed timesheet reports that detailed when and for how long each employee worked on the Corley jobsite, which is sufficiently specific to satisfy Section 429.080. *See Garavaglia v. J.L. Mason of Mo., Inc.*, 733 S.W.2d 53, 56 (Mo.App. E.D.1987). Furthermore, Mr. Unerstall testified that Unerstall billed by the unit, such as by square foot for the sidewalks, for most of the work it performed on the project. A lien claimant may satisfy Section 429.080 by basing its invoices on a per unit basis. *See Constr. Equip. Mgmt., Inc. v. Dunhill Dev. Corp.*, 892 S.W.2d 639, 642–43 (Mo. App. E.D.1994). For additional work not included in the per unit prices, Unerstall itemized the amount charged and the total number of labor hours needed. With this information, Corley was able to calculate the labor rate Unerstall applied.

Unerstall's mechanic's lien statement was sufficient for Corley to determine what work Unerstall actually performed on the house, whether the work was lienable, and whether Unerstall's charges were

erly preserve this point because Corley did not object to the sufficiency of the lien statement at trial. Unerstall, however, fails to cite

any applicable legal support for this proposition, and therefore, we will consider the merits of Corley's point on appeal.

proper. The cases cited by Corley, such as *Bresnan v. Basic Elec. Co.*, 721 S.W.2d 3 (Mo.App. E.D.1986) and *Zundel v. Edge, Inc.*, 705 S.W.2d 113 (Mo.App. E.D.1986), are distinguishable in that Unerstall provided significantly more detail in its lien statement than the lien claimants in those cases. Point denied.

### *Conclusion*

We affirm the judgment against Corley in part and reverse and remand to the trial court to recalculate the prejudgment and postjudgment interest consistent with this opinion.

GARY M. GAERTNER, JR., P.J., and MARY K. HOFF, J., concur.